John **NICHOLS** and Evelyn Nichols, Appellants,

v.

**SUKARO KENNELS, Appellee.**

No. 95–1326.

Supreme Court of Iowa.

Nov. 20, 1996.

Ta–Yu Yang, West Des Moines, for appellants.

Timothy J. McKay of McKay, Moreland & Webber, P.C., Ottumwa, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

PER CURIAM.

Plaintiffs appeal from a district court judgment awarding them damages for injuries their pet dog received while it was boarded at defendant kennel. They contend the district court erred in refusing to award damages based on their emotional distress or the replacement value or intrinsic value of the dog and in ordering them to pay costs. We affirm.

## I. *Background Facts.*

John and Evelyn Nichols boarded their seven-year-old toy poodle, Yawbus, with Sukaro Kennels. During her stay at the kennel, the kennel owner's dog tore off Yawbus's left front leg and shoulder blade. Yawbus was taken to a veterinarian and bills totaling $326.24 were incurred.

The Nichols filed a petition at law against the kennel seeking damages under the theories of negligence and strict liability. The petition sought damages to compensate the Nichols for the injuries and suffering the dog incurred and the loss of aesthetic intrinsic value of the dog.

The kennel filed an answer and an offer to confess judgment in the amount of $642.44 plus the costs of the action to date. The Nichols rejected the offer to confess. At trial the kennel stipulated as to liability but disputed the damages.

The Nichols and their daughter testified regarding their tremendous bond to the dog. The treating veterinarian and one expert witness, Tom Colvin, associate director of the Animal Rescue League of Iowa (located in Des Moines), testified the market value for a toy poodle was about $100 or $200 regardless of whether it has three or four legs. Colvin also testified that, if a pet is thought of as a family member by its owners, its value is whatever the owners think it is. Colvin indicated on cross-examination this value could be as high as the national debt. Linda Nebbe, a school counselor who has studied the human-animal bond, then testified regarding the bond between the Nichols and Yawbus. She stated the Nichols' relationship with their dog was at a "humanistic"

level, explaining that the extent of their emotional attachment and love for their pet is such that they "deem that animal as a part of their family or look at the animal as another person."

Following the trial, the court refused to award replacement damages, punitive damages, or damages for emotional distress. The court did award the Nichols $326.24 in damages for medical expenses and assessed costs against the Nichols for costs incurred after the date of filing of the offer to confess judgment.

The Nichols appeal.

## II. *Scope of Review.*

■ We review a case tried at law in the district court on errors assigned. Iowa R.App. P. 4; *Claus v. Whyle,* 526 N.W.2d 519, 523 (Iowa 1994).

## III. *Did the District Court Err in Awarding Damages?*

The Nichols contend that the district court erred in failing to award damages for their emotional injury and mental suffering. They further contend the court erred in limiting the measure of damages to the medical expenses incurred. Rather, they assert the court should have awarded damages based on evidence of their pet's intrinsic value to them.

### A. *Damages for Emotional Injury/Mental Suffering.*

■ The Nichols contend that damages for mental distress should be awarded when it can be shown that the owner's bonding with his or her pet is such that the owner deems the pet to be a member of the owner's family. In most cases, it is held that the sentimental attachment of an owner to his or her dog has no place in the computation of damages for the dog's death or injury and that no award can be made for the value of the plaintiff's mental suffering. *See generally* J.A. Connelly, Annotation, *Measure and Elements of Damages for Killing or Injuring Dog,* 1 A.L.R.3d 997 (1965) [hereinafter Annotation]. The Nichols cite two cases in which damages for mental distress were allowed in actions

for the killing of a dog. *See La Porte v. Associated Indep., Inc.,* 163 So.2d 267 (Fla. 1964); *Campbell v. Animal Quarantine Station, Etc.,* 63 Haw. 557, 632 P.2d 1066 (1981).

■ Both cases are distinguishable. In *Campbell,* the Hawaii Supreme Court allowed recovery for serious mental distress resulting from the negligent destruction of plaintiffs' dog despite the fact plaintiffs did not witness the tortious event. In Iowa, however, plaintiffs must actually witness a tortious event in order to recover damages for emotional distress. *Compare Campbell,* 632 P.2d at 1069 *with Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981). Moreover, under Iowa law a plaintiff could not recover for mental distress caused by witnessing a tortious event unless the plaintiff and victim were husband and wife or were related to within the second degree of consanguinity or affinity. *Barnhill,* 300 N.W.2d at 108. Thus, at least two elements for recovery of damages for mental distress in Iowa are not required in Hawaii.

In *La Porte* the court held that damages for mental suffering may be recovered when there is a malicious destruction of a dog. *La Porte,* 163 So.2d at 269. Here, however, there was neither a claim, nor evidence, that the injury to Yawbus was malicious.

We find that *La Porte* is distinguishable on its facts and *Campbell* distinguishable on the law. Moreover, although we are mindful of the suffering an owner endures upon the death or injury of a beloved pet, we resolve to follow the majority of jurisdictions that do not allow recovery of damages for such mental distress. *See generally* Annotation, 1 A.L.R.3d 997, at 1010. We conclude the district court correctly denied the Nichols damages for mental distress.

### B. *Intrinsic/Special Value of Dog to Owners.*

■ The Nichols contend that the district court erred in failing to award damages for the replacement cost or the pet's special value to them. We disagree.

The measure of damages for injury to, or destruction of, an animal is the amount which will compensate the owner for the

loss and thus return the owner, monetarily, to the status he or she was in before the loss.

4 Am.Jur.2d *Animals* § 162, at 504 (1964).

In determining the measure of damages for injuries to a dog, factors include its market value, which may be based on purchase price, relatively long life of breed, its training, usefulness and desirable traits.

*Id.* § 165, at 509.

■ We have stated that the "damage resulting from injury to an animal is the difference in value before and after the injury." *Miller v. Economy Hog & Cattle Powder Co.,* 228 Iowa 626, 641, 293 N.W. 4, 11 (1940).

There may be other elements of damage such as expense of treatment or temporary loss of use or of produce. But whether an animal is injured or destroyed the total damages ordinarily recoverable may not exceed its value prior thereto.

*Id.; see also Richardson v. Fairbanks North Star Borough,* 705 P.2d 454, 456 (Alaska 1985) (dogs have legal status of personal property and courts generally limit damage award to the animal's value at the time of death); *Soucek v. Banham,* 524 N.W.2d 478, 481 (Minn.App.1995) (compensatory damages for death of a dog, as item of personal property, are limited to fair market value of animal); *Daughen v. Fox,* 372 Pa.Super. 405, 417, 539 A.2d 858, 864 (1988) (when property, a dog, has been destroyed, the measure of damages would be the value of the property prior to its destruction, and owner's sentimental attachment to dog does not make it unique chattel under the law).

The Nichols note that we recognized the intrinsic value of trees in *Bangert v. Osceola County,* 456 N.W.2d 183, 190 (Iowa 1990), and contend that we should also recognize the intrinsic value of a pet dog. In *Bangert* plaintiffs brought an action against the county for the destruction of trees on their property. We noted that "[c]ommercial market value as damages is appropriate when the trees have no special use and their only worth to their owner is their value as wood products." *Id.* However, we found that when the record showed the plaintiffs allowed the trees to stand for special purposes the dis-

trict court should have considered the intrinsic value of the trees. *Id.*

*Bangert* can be distinguished on several bases. First, *Bangert,* on its face, involves damages recoverable from the destruction of trees. Second, damages were awarded pursuant to Iowa Code section 658.4 (1995), which provides for treble damages for the *willful* injury of trees. There is no similar statute relating to injury to dogs, nor is there any claim that the injury to Yawbus was the result of a willful act. Third, in *Bangert* plaintiffs provided evidence that the trees had special purposes other than for commercial use. In addition to sentimental and historic reasons, the trees were maintained for shade and windbreaks, for environmental, wildlife, and special landmark purposes. *Bangert,* 456 N.W.2d at 190.

The Nichols did not present evidence that Yawbus had a special purpose, or intrinsic value other than his value as a family pet. *See* 4 Am.Jur.2d *Animals* § 165, at 509 (it may be conceded that dogs have no intrinsic value if by that it is meant a value common to all dogs as such, independent of the particular breed or individual). Moreover, unlike the trees in the *Bangert* case, which were destroyed, there is no indication Yawbus's value as a family pet has even been diminished.

We reject the Nichols' argument that the intrinsic value of a dog should be considered in awarding damages for injury to the dog. The Nichols still enjoy the companionship of their pet and there is no evidence of the dog's special purpose. The district court properly declined to award damages for the replacement cost or special value of the Nichols' dog.

### IV. Did the District Court Err in Assessing Costs?

The Nichols apparently contend the court erred in assessing the costs of the action against them. The kennel argues this issue was not properly preserved for appeal citing *Merrill v. Hutchins,* 180 Iowa 1276, 1280–81, 164 N.W. 184, 185 (1917) (no motion was made in the trial court for retaxation of costs the appellate court does not ordinarily consider objection to costs). The kennel further

asserts the Nichols have failed to discuss the proper scope of review and how error was preserved as required by Iowa Rule of Appellate Procedure 14(a)(5).

We believe the district court correctly ordered the Nichols to pay the costs of the action incurred after the date of the kennel's confession of judgment. Iowa Code section 677.10 provides that, "[i]f the plaintiff fails to obtain judgment for more than was offered by the defendant, the plaintiff cannot recover costs, but shall pay the defendant's costs from the time of the offer." The Nichols failed to obtain judgment for more than was offered; therefore, it is proper for them to pay costs from the time of the offer to confess.

### V. Conclusion.

We conclude the district court did not err in its award of damages to the Nichols or in its assessment of costs. Accordingly, the district court judgment is affirmed.

**AFFIRMED.**