791 A.2d 1142 (2001)
348 N.J. Super. 366
Bruce HARABES and Barbara Harabes, Plaintiffs,
v.
The BARKERY, INC., Henry Macellaro, Arlene Macellaro, Susan Polizzo and Tim Bianculli, Defendants.
Superior Court of New Jersey, Law Division, Essex County.
Decided November 2, 2001.
Michael B. Meltzer, Newton, for plaintiffs.
*1143 Barbara Nabors, East Hanover, for defendants, (Passman, Dougherty & Zirulnik, attorneys.)
GRAVES, J.S.C.
The issue in this case is whether the plaintiffs are entitled to recover for emotional distress and loss of companionship resulting from the death of their pet dog. Plaintiffs claim their pet dog, Gabby, died of medical complications after she was negligently subjected to extreme heat for an extended period of time at The Barkery, a dog grooming business. Defendants' notice of motion for summary judgment seeks dismissal of plaintiffs' claims for mental distress and loss of companionship. For the reasons that follow, defendants' motion is granted.
In deciding whether to grant defendants' motion, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The facts most favorable to the plaintiffs are as follows: On September 2, 2000, the plaintiffs left their dog at The Barkery for a scheduled grooming appointment. The Barkery is owned and managed by defendants Henry Macellaro and Arlene Macellaro. Defendants Tim Bianculli and Susan Pollizzo were employees of The Barkery who were responsible for the care and grooming of the dog.
Plaintiffs claim their dog's death resulted from extremely hot conditions in the grooming room during the extended time Gabby was there. Plaintiffs contend that while Gabby was in the care and custody of the defendants, she was kept in a room that was very hot and poorly ventilated for more than ten hours. Furthermore, plaintiffs allege defendants negligently failed to notify them when it became apparent that Gabby was in distress and in need of help. According to plaintiffs, when they picked up their dog, she could not walk and had to be carried to the car. After Gabby was brought home, she still could not stand. Plaintiffs took their pet dog to a veterinary hospital where she was treated, but despite all efforts, Gabby had to be euthanized on September 8, 2000. Plaintiffs believe their dog died of medical complications that were caused by defendants' negligence. For the purpose of this motion, it is not disputed that plaintiffs were extremely close to their pet and that the death of their dog has been a traumatic experience. Plaintiffs seek to recover damages for emotional distress and loss of companionship resulting from the death of their dog.
In Hyland v. Borras, 316 N.J.Super. 22, 719 A.2d 662 (App.Div.1998), the Appellate Division considered a claim brought by the owner of a shih tzu dog, who alleged that she suffered economic damages when defendant's pet bulldog attacked the shih tzu causing serious injuries. In affirming the judgment of the Law Division, which awarded damages in excess of the dog's market value or "replacement cost," the court stated "generally the measure of damages for the negligent destruction of personal property is the difference between its market value before and after the injury." Id. at 24-25, 719 A.2d 662. Nevertheless, the court distinguished companion pets from other personal property:
Most animals kept for companionship have no calculable market value beyond the subjective value of the animal to its owner, and that value arises purely as the result of their relationship and the length and strength of the owner's attachment to the animal. In that sense then, a household pet is not like other fungible or disposable property, intended *1144 solely to be used and replaced after it has outlived its usefulness. [Hyland, 316 N.J.Super. at 25, 719 A.2d 662.]
In Hyland, the court addressed only economic damages and noted "[t]he more difficult question of whether and when a plaintiff should, if ever, be awarded non-economic damages for such a loss is not before us and is not intended to be answered by this opinion." Id. at 26, 719 A.2d 662. There is no New Jersey precedent permitting a pet owner to recover non-economic damages when a pet is negligently injured or killed. Therefore, the court looks "to the logic, policy and rationale which underlies similar cases in this and other jurisdictions" for guidance. Burke v. Briggs, 239 N.J.Super. 269, 271, 571 A.2d 296 (App.Div.1990).
A review of decisions from other states reveals that pets are usually classified as personal property, and damages for negligent infliction of emotional distress resulting from the loss of a pet are generally not allowed. Rabideau v. City of Racine, 243 Wis.2d 486, 627 N.W.2d 795, 798 (2001) (public policy considerations precluded the owner of a companion dog, who observed police officer shoot and kill her dog, from bringing claim for negligent infliction of emotional distress); Fackler v. Genetzky, 257 Neb. 130, 595 N.W.2d 884, 892 (1999) ("[W]e hold that damages for mental suffering or emotional distress may not be recovered for the negligently inflicted death of an animal."); Nichols v. Sukaro Kennels, 555 N.W.2d 689, 691 (Iowa 1996) ("[A]lthough we are mindful of the suffering an owner endures upon the death or injury of a beloved pet, we resolve to follow the majority of jurisdictions that do not allow recovery of damages for such mental distress."); Richardson v. Fairbanks North Star Borough, 705 P.2d 454, 456 (Alaska 1985) (dogs have legal status of personal property and courts generally limit a damage award to the animal's value at the time of death); Koester v. VCA Animal Hosp., 244 Mich.App. 173, 624 N.W.2d 209, 211 (2000), appeal denied, 631 N.W.2d 339 (Mich.2001) ("We decline to allow the recovery of emotional distress damages arising from negligence committed in the care of plaintiff's pet."); Zeid v. Pearce, 953 S.W.2d 368, 369 (Tex.App.1997) ("[O]ne may not recover damages for pain and suffering or mental anguish for the loss of a pet."); Jason v. Parks, 224 A.D.2d 494, 638 N.Y.S.2d 170, 171 (N.Y.App.Div.1996) ("It is well established that a pet owner in New York cannot recover damages for emotional distress caused by the negligent destruction of a dog."); Carroll v. Rock, 220 Ga.App. 260, 469 S.E.2d 391, 394 (1996) (allowing evidence of pet owner's emotional distress when her cat escaped from the care of her veterinarian was reversible error); Soucek v. Banham, 524 N.W.2d 478, 481 (Minn.Ct. App.1995) (compensatory damages for death of a dog, as item of personal property, are limited to fair market value of animal); Daughen v. Fox, 372 Pa.Super. 405, 539 A.2d 858, 865 (1988), appeal denied, 520 Pa. 605, 553 A.2d 967 (1988), ("Under no circumstances, under the law of Pennsylvania, may there be recovery for loss of companionship due to the death of an animal.").
Some states allow damages for intentional infliction of emotional distress if the conduct resulting in injury to or death of a pet is either intentional, willful, malicious, or reckless. Richardson, supra at 456; LaPorte v. Associated Independents, Inc., 163 So.2d 267, 268 (Fla.1964); Burgess v. Taylor, 44 S.W.3d 806, 813 (Ky.Ct.App. 2001); Gill v. Brown, 107 Idaho 1137, 695 P.2d 1276, 1278 (App.1985). However, in this case plaintiffs do not allege, and there is no evidence to suggest, that plaintiffs' dog died as a result of intentional, willful, malicious, or reckless conduct by the defendants.
*1145 Plaintiffs argue in favor of claims for negligent infliction of emotional distress and loss of companionship; however, there are practical reasons and public policy considerations that weigh against such claims. First, it is difficult to define who may be entitled to recover. In Rabideau v. City of Racine, 243 Wis.2d 486, 627 N.W.2d 795 (2001), the plaintiff, whose dog was shot by a police officer after the plaintiff's dog attacked defendant's dog, suggested that compensation should be limited to the "human companion" of an animal who is injured or killed. The court noted, however, "it is difficult to define with precision the limit of the class of individuals who fit into the human companion category. Is the particular human companion every family member? the owner of record or primary caretaker? a roomate?" Id. at 802. Similarly, the same court concluded it would be difficult to identify the class of animals for which a pet owner may recover:
We are particularly concerned that were such a claim to go forward, the law would proceed upon a course that had no just stopping point. Humans have an enormous capacity to form bonds with dogs, cats, birds and an infinite number of other beings that are non-human. Were we to recognize a claim for damages for the negligent loss of a dog, we can find little basis for rationally distinguishing other categories of animal companion. [Rabideau, 627 N.W.2d at 799.] As one commentator has noted, "what is a pet to one person can seem as a menace to another." Jay M. Zitter, Annotation, Recovery of Damages for Emotional Distress Due to Treatment of Pets and Animals, 91 A.L.R. 5th 545, 2001 WL 1042542 (2001).
Another policy consideration is the need to ensure fairness of the financial burden placed upon a negligent defendant. In Nichols v. Sukaro, 555 N.W.2d 689 (Iowa 1996), plaintiffs alleged that while their toy poodle was at the defendant's kennel, the kennel owner's dog attacked and injured plaintiffs' dog. At trial, plaintiffs' expert testified that though the market value of plaintiffs' dog was $100$200, "if a pet is thought of as a family member by its owners, its value is whatever the owner thinks it is." Nichols, at 690. On cross-examination, the expert testified that in the mind of a pet owner, the value of a pet "could be as high as the national debt." Ibid. Such testimony illustrates the difficulty in quantifying the emotional value of a companion pet and the risk that a negligent tortfeasor will be exposed to extraordinary and unrealistic damage claims.
Additionally, there is the concern that allowing such claims to go forward would open the floodgates to future litigation. "Such an expansion of the law would place an unnecessary burden on the ever burgeoning caseloads of the court in resolving serious tort claims for injuries to individuals." Johnson v. Douglas, 187 Misc.2d 509, 723 N.Y.S.2d 627, 628 (N.Y.Sup.Ct.2001).
It is useful to analogize the facts of the present case to wrongful death claims. The Wrongful Death Act provides as follows:
In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased, to the persons entitled to any intestate property of the decedent. [N.J.S.A. 2A:31-5.]
The Act does not provide for compensation for emotional loss. Carey v. Lovett, 132 N.J. 44, 67, 622 A.2d 1279 (1993); Green v. Bittner, 85 N.J. 1, 12, 424 A.2d 210 (1980). In a wrongful death action, the jury charge contains the following language:
I instruct you that the pecuniary injuries or money losses in this case should not *1146 include emotional distress, anguish, grief and sorrow or loss of emotional satisfaction derived from the society and companionship of the decedent. These matters, though real and very distressing, cannot be considered in determining the extent of the financial or pecuniary loss suffered by the survivors who are represented in this action by the plaintiff. [Model Jury Charge, Civil § 6.16.]
In Green, Donna Green, a high school senior, was killed in an automobile accident. Her parents filed an action under the Wrongful Death Act against the driver of the other vehicle. The Court found that to be compensable, the lost companionship of a child to death "must be that which would have provided services substantially equivalent to those provided by the `companions' often hired today by the aged or infirmed ..." Id. at 12, 424 A.2d 210. The Court further explained:
No pecuniary value may be attributed to the emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger, although such pleasure will often be the primary value of the child's service, indeed, in reality, its most beneficial aspect. This loss of added emotional satisfaction that would have been derived from the child's companionship is fundamentally similar to the emotional suffering occasioned by death. Both are emotional rather than "pecuniary injuries," one expressed in terms of actual emotional loss, the other in terms of lost prospective emotional satisfaction. [Green, 85 N.J. at 12-13, 424 A.2d 210.]
As recognized by the Wisconsin Supreme Court, "[l]abeling a dog `property' fails to describe the value human beings place upon the companionship that they enjoy with a dog ... A companion dog is not a living room sofa or dining room furniture. This term inadequately and inaccurately describes the relationship between a human and a dog." Rabideau, supra at 798. Nevertheless, there is no authority in this state for allowing plaintiffs to recover non-economic damages resulting from defendants' alleged negligence. Furthermore, various public policy concerns mitigate against permitting such claims. Most significantly, there is no reason to believe that emotional distress and loss of companionship damages, which are unavailable for the loss of a child or spouse, should be recoverable for the loss of a pet dog. See Altieri v. Nanavati, 41 Conn.Supp. 317, 573 A.2d 359, 361 (1989).
In view of the foregoing, defendants' notice of motion for partial summary judgment dismissing plaintiffs' claims for negligent infliction of emotional distress and loss of companionship is granted.

SQUIB
Public policy considerations prevent pet owners from recovering emotional distress and loss of companionship damages in connection with the loss of a pet dog.