**OBERSCHLAKE et al., Appellants,**

v.

**VETERINARY ASSOCIATES ANIMAL HOSPITAL et al., Appellees.**

[Cite as *Oberschlake v. Veterinary Assoc. Animal Hosp.*, 151 Ohio App.3d 741, 2003-Ohio-917.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2002–CA–44.

Decided Feb. 28, 2003.

Paul R. Leonard, for appellants.

Jerome F. Rolfes, for appellees.

BROGAN, Judge.

{¶ 1}  This is the story of "Poopi," a dog who tried to sue for emotional distress and failed.  According to the complaint filed by her owners, Poopi was taken to Veterinary Associates Animal Hospital in March 2001 to have her teeth cleaned.  Unfortunately, while Poopi was under anesthesia, the veterinarian also tried to spay her, even though she had previously been spayed as a puppy.  Consequently, Poopi emerged from anesthesia not only with clean teeth but also with a three-inch closed incision on her abdomen.

{¶ 2}  Subsequently, the owners, Sean and Melissa Oberschlake, filed an action on Poopi's behalf, alleging that veterinary malpractice caused Poopi physical pain and suffering, as well as emotional distress.  The Oberschlakes asked for damages, including expenses for Poopi's further medical and "psychological" care.  They also requested compensatory damages for their own emotional distress.  As causes of action, the complaint alleged veterinary malpractice, negligent infliction of emotional distress, and loss of companionship.

{¶ 3}  After receiving the complaint, the defendants (the Animal Hospital and Christian Hurst, DVM), filed a motion to dismiss and/or for partial judgment on the pleadings.  In the motion, the defendants contended that dogs are personal property under Ohio law.  Defendants also argued that claims for negligent infliction of emotional distress and for loss of companionship in connection with personal property would not be permitted.  The trial court agreed and granted the motion to dismiss as to these claims.

{¶ 4}  The veterinary malpractice claim was referred to an arbitration panel, which awarded the Oberschlakes compensatory damages of $104.28, the costs of the action, and arbitration fees of $250.  Subsequently, the court entered judgment against defendants in that amount, and this appeal by the Oberschlakes followed.  The Oberschlakes raise the following single assignment of error:

{¶ 5} "The trial court erred and abused its discretion by granting the defendant-appellees' motion to dismiss counts two and three of plaintiffs' complaint regarding the emotional distress and loss of companionship/consortium (noneconomic damages) suffered by 'Poopi's' pet guardians as a result of defendants' malpractice."

{¶ 6} After considering the applicable law, we find the assignment of error without merit. Consequently, the trial court judgment will be affirmed.

{¶ 7} Although plaintiffs classify their quest as one for "clarification," what they are essentially seeking is a change in the law. Plaintiffs concede that dogs are currently classified as personal property under Ohio law and that the law does not recognize noneconomic damages for personal property. Nonetheless, plaintiffs contend that we should "do the right thing" by distinguishing between inanimate property like chairs and tables, and animate property like dogs, cats, birds, and other animals who may serve as companions. Such a change in the law may one day occur, but this is not the proper case for plowing new ground. Furthermore, even if the situation were otherwise, we would have difficulty deviating from current law, since the Ohio legislature has explicitly dictated how dogs are to be classified. Specifically, R.C. 955.03 states:

{¶ 8} "Any dog which has been registered under sections 955.01 and 955.04 of the Revised Code and any dog not required to be registered under such sections shall be considered as personal property and have all the rights and privileges and be subject to like restraints as other livestock."

{¶ 9} Typically, damages for loss of personal property are limited to the difference between the property's fair market value before and immediately after the loss. *Akro-Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221, 226, 685 N.E.2d 246. Due to this standard, damages will seldom be awarded for the loss of a family pet, since pets have little or no market value. See *Ramey v. Collins* (June 5, 2000), Scioto App. No. 99CA2665, 2000 WL 776932, at * 3. In *McDonald v. Ohio State Univ. Veterinary Hosp.* (1994), 67 Ohio Misc.2d 40, 644 N.E.2d 750, the Court of Claims did award $5,000 in damages for a German Shepard pedigree dog who was paralyzed as the result of the admitted malpractice of the state veterinary hospital. The court recognized that market value is the normal standard, but believed that the standard of value to the owner could be used "in exceptional circumstances." Id. at 42, 644 N.E.2d 750. The court then applied that standard based on the dog's unique pedigree and time invested in specialized, rigorous training, which established that a similar dog was not available on the open market. Id. Notably, the court also stressed that sentimentality is not a proper element in determining damages caused to animals. Id. The amount ultimately awarded included damages for the animal's loss, plus potential earnings from stud fees.

{¶ 10} Nothing about the allegations in the complaint suggests that Poopi is unique or that the circumstances of this case are exceptional in any way. While Poopi was a Miniature Poodle, the complain does not allege that Poopi had a unique pedigree or was used for breeding. In fact, since the dog had been spayed, breeding would not even have been an issue. Consequently, we find nothing to distinguish this case from any other situation where a family pet is injured by the negligent action of a veterinarian. Damages were properly limited to costs connected to the improper surgery, and did not include emotional distress or the pain and suffering of either the animal or its caretakers.

{¶ 11} In attempting to convince us that the law should be changed, plaintiffs cite various articles recognizing a human-animal bond and urging expansion of tort law to allow recovery of noneconomic injuries. For example, one article comments:

{¶ 12} "If a companion animal is wrongfully killed, through veterinary malpractice or otherwise, her human companion suffers an injury that is of the same kind, if not necessarily of the same degree, that she would suffer from the wrongful killing of any other family member. If a human companion witnesses the wrongful killing of, or severe injury to, a companion animal, the injuries he suffers are also of the same kind.

{¶ 13} "The 'animals as property' syllogism arbitrarily, irrationally, unfairly, and formalistically limits recovery of noneconomic damages for the wrongful deaths of companion animals. It ignores the fact that the relationship between a human and his companion animal is no more based upon economics than is any other family relationship. It perversely permits the award of damages for an economic loss that a human companion does not suffer and refuses to compensate for the emotional distress and loss of society and companionship that he actually does suffer." Wise, Recovery of Common Law Damages for Emotional Distress, Loss of Society, and Loss of Companionship for the Wrongful Death of a Companion Animal (1998), 4 Animal Law 33, 93.

{¶ 14} In arguing that a distinction should be made between pets and inanimate objects, the Oberschlakes also rely on *Corso v. Crawford Dog & Cat Hosp., Inc.* (City Civ.Ct.1979), 97 Misc.2d 530, 415 N.Y.S.2d 182, which overruled prior precedent and held that a pet "occupies a special place somewhere in between a person and a piece of personal property." 97 Misc.2d at 531, 415 N.Y.S.2d 182. However, *Corso* has been described as an aberration "flying in the face of overwhelming authority to the contrary." *Gluckman v. Am. Airlines, Inc.* (S.D.N.Y.1994), 844 F.Supp. 151, 158 (declining to follow *Corso* ). We likewise decline to follow the approach outlined in *Corso,* particularly since it contradicts the Ohio legislature's classification of dogs as personal property.

{¶ 15}   Whether or not one agrees with the view that pets are more than personal property, it is clear that Ohio does not recognize noneconomic damages for injury to companion animals.   Moreover, even if noneconomic damages were allowed, Ohio limits recovery for negligent infliction of emotional distress to situations where a plaintiff-bystander observes an accident and suffers "emotional injury that is both severe and debilitating."   *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 451 N.E.2d 759.   See, also, *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 245, 513 N.E.2d 278.   The Ohio Supreme Court has described this type of injury as "beyond trifling mental disturbance, mere upset or hurt feelings. * * * [S]erious emotional distress describes emotional injury which is both severe and debilitating.   Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."   (Citation omitted.)   6 Ohio St.3d at 78, 6 OBR 114, 451 N.E.2d 759.

{¶ 16}   In the present case, the allegations in the complaint indicate that neither of the Oberschlakes was a bystander.   In fact, the dog was left at the veterinary hospital and was picked up some time after the surgery was performed.   As the Ohio Supreme Court has stressed on various occasions, "[t]he only logical definition of 'bystander' is 'one who is at the scene.'   'Bystander' does not include a person who was nowhere near the accident scene and had no sensory perception of the events surrounding the accident."   *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 92–93, 545 N.E.2d 83, overruled on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809.   See, also, *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 85–86, 652 N.E.2d 664.

{¶ 17}   As a further point, being "shocked" over improper surgery to a dog does not present the type of severe and debilitating emotional injury required for negligent infliction of emotional distress.   Accordingly, even if Ohio law permitted the award of noneconomic damages, negligent infliction of emotional distress would not have been an appropriate cause of action.

{¶ 18}   We note that the Oberschlakes have also included a claim for Poopi's own emotional distress.   Although Poopi was obviously directly involved in the incident, a dog cannot recover for emotional distress—or indeed for any other direct claims of which we are aware.   We recognize that animals can and do suffer pain or distress, but the evidentiary problems with such issues are obvious. As a result, the claims on Poopi's behalf were also not viable.

{¶ 19}   We do note that one Ohio court has impliedly indicated that dog owners may present claims for intentional infliction of emotional distress.   See *Langford v. Emergency Pet Clinic* (1994), 96 Ohio App.3d 174, 644 N.E.2d 1035. In *Langford,* a pet owner sued a clinic and pet cemetery that had buried her dog

in a mass grave. Summary judgment was granted against the pet owner because she failed to prove that the defendants' conduct was intentional or reckless, or that she had suffered mental anguish beyond her endurance. Id. at 178, 644 N.E.2d 1035. The implication is that under appropriate circumstances, such a claim might be presented. However, the present case does not involve appropriate circumstances. Moreover, the mental anguish in such situations must be " 'so serious and of a nature that no reasonable man could be expected to endure it.' " Id. Even conceding the bond between many humans and their pets, the burden is one that would be very difficult to meet.

{¶ 20} As a final point, we have found no authority in Ohio that would allow recovery for loss of companionship of animals. Other jurisdictions also do not permit recovery in such cases. See, e.g., *Krasnecky v. Meffen* (2002), 56 Mass.App. 418, 777 N.E.2d 1286, 1289–1290 (refusing to allow recovery for loss of companionship of slain sheep, because Massachusetts wrongful-death statutes limit recovery to persons); *Lewis v. Di Donna* (2002), 294 A.D.2d 799, 801, 743 N.Y.S.2d 186 (loss of companionship of pet is not actionable in New York); and *Harabes v. Barkery, Inc.* (2001), 348 N.J.Super. 366, 791 A.2d 1142 (denying recovery for negligent infliction of emotional distress for death of pet dog, due to public-policy considerations).

{¶ 21} Among the public-policy considerations mentioned in *Harabes* were (1) problems with defining limit of the class of persons who fit within the human companion category, i.e., whether recovery should be allowed for every family member, for the owner of record or primary caretaker; or for even a roommate; (2) problems defining the class of animals for whom recovery would be allowed; (3) the need to ensure fairness of financial burdens on defendants, due to difficulty in quantifying the emotional value of pets; and (4) the risk of opening the "floodgates" of litigation and increasing the burden on courts. 348 N.J.Super. at 371, 791 A.2d at 1145. We agree that these are legitimate public-policy concerns. In particular, the first three items pose significant barriers to a cause of action.

{¶ 22} In light of the preceding discussion, we find no error in the trial court's decision dismissing plaintiffs' claims for negligent infliction of emotional distress and loss of companionship. Accordingly, the single assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.

FREDERICK N. YOUNG, Judge, concurring.

{¶ 23} I reluctantly agree that under the current state of Ohio law, the owners of a pet animal have no claim for noneconomic injuries to their pet. The General Assembly should at least consider recognizing pets as companion animals and allow owners to recover reasonable damages for their loss of or injury to a much-loved pet. The state of Colorado is presently considering just such a measure, and a start in this direction has already been made in Ohio by S.B. No. 221, which has made cruelty to companion animals a crime, effective April 9, 2003.