### JAMES PANTELOPOULOS v. JENNIFER PANTELOPOULOS ET AL.

Superior Court, Judicial District of Litchfield
File No. CV-04-0092446S

Memorandum filed January 13, 2005

---

*James Pantelopoulos*, pro se, the plaintiff, with *Massamillo & Ruff*, of the New York bar.

*Febbroriello, Conti & Levy*, for the named defendant.

*Logan & Mencuccini*, for the defendant Herbert Bartz.

BOZZUTO, J. This is an action brought by the plaintiff, James Pantelopoulos, against the defendants, Jennifer Pantelopoulos and Herbert Bartz. On September 17, 2004, the plaintiff filed an amended ten count complaint against the defendants for damages as a result of their actions following the dissolution of the marriage between the plaintiff and the named defendant. Count nine of the amended complaint, which is the only count relevant to the present motion to strike, sounds in intentional infliction of emotional distress against the named defendant.

The plaintiff alleges the following facts. The plaintiff and the named defendant were divorced in the state of New Jersey on August 8, 2003. On or about August 14, 2003, the named defendant caused the issuance of a restraining order that prevented the plaintiff from entering the marital residence located in New Jersey. The plaintiff owned a dog for approximately ten years until the dog's death and shared a close familial type relationship with the dog. Sometime in September, 2003, the named defendant moved out of the marital residence and knowingly and intentionally left the dog in the garage without food or water. The named defendant's actions evinced an intent to inflict and, in fact, caused extreme emotional distress to the plaintiff. The dog died of starvation and dehydration, which was caused by the intentional, wilful, malicious and reckless conduct of the named defendant. As a result of the named defendant's actions, the plaintiff has suffered compensable monetary damages.

On November 12, 2004, the named defendant filed a motion to strike the ninth count of the plaintiff's amended complaint.[1] The motion was accompanied by a memorandum of law. The plaintiff filed a memorandum of law in opposition to the named defendant's motion to strike on November 24, 2004.

## I

## DISCUSSION

"The motion to strike . . . replaced the demurrer in our practice. Its function, like that of the demurrer it served, is to test the legal sufficiency of the pleading." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 771, 802 A.2d 44 (2002). The role of the trial court is "to examine the [complaint], construed in favor

[1] "Practice Book [§ 10-41] . . . requires that a motion to strike based on legal insufficiency distinctly specify the reason or reasons for each such claimed insufficiency. . . . [A] motion to strike that does not specify the grounds of insufficiency is fatally defective . . . . Practice Book [§ 10-42], which requires a motion to strike to be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies, does not dispense with the requirement of [§ 10-41] that the reasons for the claimed pleading deficiency be specified in the motion itself." (Citation omitted; internal quotation marks omitted.) *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683 n.5, 513 A.2d 66 (1986) (court considered merits of motion to strike where "plaintiff made no objection to the form of the defendant's motion to strike"). "A motion to strike that lacks specificity, but adequately submits the material issue to the court, however, is sufficient to comply with Practice Book § [10-41]." (Internal quotation marks omitted.) *A. Secondino & Son, Inc.* v. *L.D. Land Co.*, Superior Court, judicial district of New Haven, Docket No. CV-94-0359726 (December 29, 1994) (13 Conn. L. Rptr. 232, 233) (*Hadden, J.*). In the present case, the named defendant's motion to strike does not specify the grounds on which she moves to strike count nine of the plaintiff's complaint in violation of Practice Book § 10-41; however, the plaintiff has not objected to the motion, so the court will consider the merits.

of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 378, 698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997).

The named defendant moves to strike count nine on the ground that it fails to state a legally sufficient cause of action for intentional infliction of emotional distress, as there is no authority in Connecticut that permits recovery of noneconomic damages in connection with negligent or intentional acts resulting in the death of a pet. In response, the plaintiff argues that (1) Connecticut and New Jersey permit recovery for intentional infliction of emotional distress in connection with the death of a pet, and (2) in a case of conflict with Connecticut law, New Jersey law would prevail, as the parties were domiciled in and residents of New Jersey at all relevant times, and the alleged actions of the named defendant took place in New Jersey.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted; internal quotation marks

omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim, Outrageous!" (Citations omitted; internal quotation marks omitted.) Id., 210–11.

In Connecticut, "[o]ur common law has never recognized a right to sue an individual for intentional or negligent infliction of emotional distress resulting from injury to such property as a pet." *Myers* v. *Hartford*, 84 Conn. App. 395, 402, 853 A.2d 621, cert. denied, 271 Conn. 927, 859 A.2d 582 (2004). "Labeling a pet as property fails to describe the emotional value human beings place on the companionship that they enjoy with such an animal. Although dogs are considered property . . . this term inadequately and inaccurately describes the relationship between an individual and his or her pet. That having been said, there is no common-law authority in this state that allows plaintiffs to recover noneconomic damages resulting from a defendant's alleged negligent or intentional act resulting in the death of a pet . . . ." (Citation omitted.) Id.

"Furthermore, various public policy concerns discourage [the court] from recognizing a right to such a claim. First, our Supreme Court has noted the advisability of setting limits for 'establishing the permissible instances of recovery [for claims of infliction of emotional distress]. There are fears of flooding the courts with spurious and fraudulent claims; problems of proof

of the damage suffered; [and] exposing the defendant to an endless number of claims . . . .' " Id. "Most significantly, claims for infliction of emotional distress are unavailable for the loss of a child or spouse, except when the bereaved is a bystander. Because our common law has not extended the right to sue for damages for the deprivation of such close human relationships when the plaintiff has not witnessed the fatal injury, it would be incongruous to extend it to emotional distress resulting to a person from the loss of a pet." Id., 403.[2]

The court's analysis does not end with the Connecticut common law. The plaintiff has argued that if Connecticut does not recognize a cause of action for intentional infliction of emotional distress over the loss of a pet, then his claim should be allowed based on New Jersey law. Nevertheless, it is not necessary for the court to embark on a conflict of law analysis,[3] as the court is satisfied that New Jersey also does not recognize a claim for intentional infliction of emotional distress for the loss of a pet. When the law of two jurisdictions is the same on a particular issue, a "false

[2] The plaintiff cites a recent trial court decision, *Liotta* v. *Segur*, Superior Court, judicial district of Danbury, Docket No. CV-02-0347756S (March 15, 2004) (36 Conn. L. Rptr. 621) (*Nadeau, J.*), for the proposition that a pet owner may recover for the "intentional" acts of another involving their pet. Nevertheless, *Liotta* is not controlling and was decided prior to the Appellate Court's ruling in *Myers* v. *Hartford*, supra, 84 Conn. App. 395.

[3] In *O'Connor* v. *O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986), the Supreme Court abandoned the more traditional method of deciding a conflict of law issue by not adhering "to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti." (Internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 800, 830 A.2d 752 (2003). The court in *Dugan* observed that the *O'Connor* court expressly abandoned "categorical allegiance to the doctrine of lex loci delicti in tort actions . . . [and] substituted the most significant relationship analysis of §§ 6 and 145 of the Restatement [(Second) of Conflict of Laws] . . . for the doctrine of lex loci delicti." (Internal quotation marks omitted.) Id., 800–801.

conflict" is created in which no conflict of law analysis is necessary. *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 800, 830 A.2d 752 (2003). There is no authority that supports the plaintiff's argument that New Jersey recognizes an intentional infliction of emotional distress claim for the loss of a pet. The plaintiff has cited *Harabes* v. *Barkery, Inc.*, 348 N.J. Super. 366, 369, 791 A.2d 1142 (2001), for the proposition that New Jersey does recognize such a claim, but the court finds this reading of *Harabes* to be flawed. The *Harabes* court was deciding a negligent infliction of emotional distress claim. Although the court did acknowledge in dicta that a minority of other jurisdictions have allowed intentional infliction of emotional distress claims for the loss of a pet, it declined to address the issue further. Id., 371. Moreover, the reasoning applied in *Harabes* relating to noneconomic damages in connection with the death or injury of a pet is closely aligned with that expressed in Connecticut court decisions. "There is no New Jersey precedent permitting a pet owner to recover non-economic damages when a pet is negligently injured or killed." Id., 369. "Furthermore, various public policy concerns mitigate against permitting such claims. Most significantly, there is no reason to believe that emotional distress and loss of companionship damages, which are unavailable for the loss of a child or spouse, should be recoverable for the loss of a pet dog." Id., 373.

## II

## CONCLUSION

In the present case, the plaintiff alleges that the named defendant intentionally allowed the plaintiff's pet to starve to death in the plaintiff's home that the named defendant was occupying in New Jersey. Although the court is sympathetic to the loss experienced by the plaintiff in losing a beloved pet, neither Connecticut nor New Jersey recognizes a cause of action for intentional infliction of emotional distress in

connection with the loss of a pet. Accordingly, the named defendant's motion to strike count nine of the plaintiff's amended complaint is granted.