618 S.E.2d 368

**Helen Tracy CARBASHO, Plaintiff Below, Appellant,**

v.

**Michael S. MUSULIN, Defendant Below, Appellee.**

No. 32288.

Supreme Court of Appeals of West Virginia.

Submitted: June 14, 2005.

Filed: July 1, 2005.

David A. Jividen, Esq., Tiffany E. Davis, Esq., Jividen Law Offices, PLLC, Wheeling, for Appellant.

W. Gus Saines, Esq., McDermott & Bonenberger, PLLC, Wheeling, for Appellee.

Karen Kahle, Esq., Steptoe & Johnson, PLLC, Wheeling, for Amicus Curiae Animal Legal Defense Fund.

Justice MAYNARD delivered the Opinion of the Court.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

MAYNARD, Justice.

This case is before this Court upon appeal of a final order of the Circuit Court of Brooke County entered on March 31, 2004. In that order, the circuit court granted summary judgment in favor of the appellee and defendant below, Michael Musulin, finding that the measure of property damages for the loss of a pet dog is limited to the dog's fair market value. In this appeal, the appel-

lant and plaintiff below, Helen Tracy Carbasho, contends that the damages recoverable for the loss of a pet dog must include the "true and special value" of the dog to its owner, and therefore, the circuit court erred by granting summary judgment to Mr. Musulin.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel.[1] For the reasons set forth below, the final order is affirmed.

## I.

## FACTS

This case arises out of an accident that occurred around midnight on June 8, 2001, in Follansbee, Brooke County, West Virginia. At that time, Ms. Carbasho was walking her dog, Groucho, down an alley when both she and the dog were struck by a vehicle driven by Mr. Musulin. Both Ms. Carbasho and her dog were injured. The dog died shortly thereafter from its injuries.

On February 19, 2002, Ms. Carbasho filed suit against Mr. Musulin seeking damages for her personal injuries and the death of her dog. On March 20, 2003, the parties agreed to a settlement with regard to Ms. Carbasho's bodily injury claims. As a result, the circuit court entered an order on April 10, 2003, stating that "the only issue remaining to be determined was the property damage value of the dog, Groucho, and whether or not sentimental value, emotional distress and emotional attachment are recoverable damages in West Virginia for the loss of the dog, and if so, to what extent."

On April 22, 2003, Mr. Musulin moved for summary judgment requesting that the circuit court dismiss Ms. Carbasho's claim for damages in excess of the dog's assessed value which was estimated to be between $100.00 and $150.00. By order dated March 31, 2004, the circuit court granted Mr. Musulin's motion limiting Ms. Carbasho's recovery for the loss of her dog to its fair market or assessed value. This appeal followed.

1. At this juncture, we wish to acknowledge the participation of amicus curiae, Animal Legal Defense Fund, who filed a brief in this case.

## II.

### STANDARD OF REVIEW

██ It is well established that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). In Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" With this standard in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

██ The issue presented in this case is the proper measure of property damages for the loss of a pet dog. As noted above, Ms. Carbasho maintains that her dog's market value is not an adequate measure of damages. She contends that the loss of companionship she has suffered must be considered as an element of the dog's actual value. She says that the "real worth" of a pet is not primarily financial, but emotional, and its value should be determined based upon the relationship between the pet and its owner, and not its market value.[2]

██ In support of her argument, Ms. Carbasho relies upon *Julian v. DeVincent,* 155

W.Va. 320, 322, 184 S.E.2d 535, 536 (1971), a case in which this Court stated that a plaintiff may recover damages for the loss of a dog by proving "the market value, pecuniary value or *some special value.*" (Emphasis added). Ms. Carbasho submits that pursuant to *Julian,* the circuit court's order should be reversed and her case should be remanded to allow her to prove her dog's "special value." Ms. Carbasho's reliance upon *Julian* is misplaced, however, because this Court further held in that case that damages for sentimental value or mental suffering are not recoverable. The Syllabus of *Julian* holds:

> In order to recover damages for the loss of a dog the market value, pecuniary value or some special value must be proved and the general rule is that damages for sentimental value or mental suffering are not recoverable.[3]

(Footnote added).

As was noted in *Julian,* the Legislature has limited civil damages recoverable against a person who kills or injures a dog wrongfully or unlawfully. In that regard, W.Va.Code § 19-20-12(a) (1984) provides, in pertinent part:

> Any person whose dog, cat, other animal or reptile as specified herein shall be killed or injured wrongfully or unlawfully by any other person shall have a right of action against the person who shall so kill or injure such dog, cat, animal or reptile but in no case involving a dog can recovery be had in excess of the assessed value of such dog.[4]

---

**2.** It is noted that the complaint filed by Ms. Carbasho included a claim for intentional and/or negligent infliction of emotional distress. However, that claim was resolved in the settlement reached by the parties on March 20, 2003. Pursuant to the circuit court order, the only issue remaining was the property damage claim. To the extent that Ms. Carbasho continues to make a claim of emotional distress, she does so, not as a cause of action, but rather as an element to be considered in determining her property damage.

**3.** In reviewing the cases and other authority cited in *Julian* in support of this holding, we believe that the inclusion of the phrase "some special value" was a reference to a dog's particular traits, pedigree, and/or special qualities, such as whether a dog is a service animal assisting a disabled person. While fair market value is the

normal standard, in some cases courts have allowed owners to show the value of the animal to them. *See, e.g., McDonald v. Ohio State Univ. Veterinary Hosp.,* 67 Ohio Misc.2d 40, 644 N.E.2d 750 (1994) (awarding $5000 in damages for a German Shepard pedigree dog paralyzed as result of veterinary malpractice where it was established that a dog with the same unique pedigree and specialized rigorous training was not available in the open market). In this case, there was no evidence that Ms. Carbasho's dog had any particular traits or pedigree that would warrant such a value determination.

**4.** In 2003, the Legislature amended this statute and removed the phrase "but in no case involving a dog can recovery be had in excess of the assessed value of such dog." Ms. Carbasho says

(Footnote added). Ms. Carbasho argues that this statute does not apply in her case because there was no finding of criminal liability against Mr. Musulin with regard to the death of her dog. She has alleged that Mr. Musulin was negligent, not that he intentionally killed her dog. We find no merit to this argument however, as we fail to see how the negligent killing of a dog could warrant a greater recovery of damages than the intentional killing of the animal.

■ Moreover, the Legislature has declared that dogs are personal property. W.Va.Code § 19–20–1 (1975) states:

> Any dog shall be and is hereby declared to be personal property within the meaning and construction of the laws of this State, and any dog above the age of six months shall be subject to taxation.

This Court has long held that damages recoverable for the negligent destruction of personal property are limited to the fair market value. Syllabus Point 5 of *Stenger v. Hope Natural Gas Co.*, 139 W.Va. 549, 80 S.E.2d 889 (1954), states:

> The measure of recovery for property destroyed through negligence is the fair market value of the property at the time of destruction. The measure of recovery for negligent damage. to property not destroyed, where the damage is of a permanent nature, is the diminution in the market value of the property by reason of the injury.

■ Ms. Carbasho argues that it is unfair to view pets in the same way that we do other personal property when it comes to damages for their injury or destruction. She says that the death of a pet is simply not the same as losing an inanimate object. Certainly, "[l]abeling a dog 'property' fails to describe the value human beings place upon the companionship that they enjoy with a dog. A companion dog is not a fungible item, equivalent to other items of personal property.... This term inadequately and inaccurately describes the relationship between a human and a dog." *Rabideau v. City of Racine*, 243 Wis.2d 486, 491–92, 627 N.W.2d 795, 798 (2001). While Ms. Carbasho's dis-.

tress over the loss of her dog is understandable, our law categorizes dogs as personal property and as a result sentimental attachment of an owner to his or her dog cannot be considered in the computation of damages.

■ Our statutory law, as well as, this Court's decision in *Julian*, clearly establish that damages for sentimental value, mental suffering, and emotional distress are not recoverable for the death of a pet dog. Not only is that the law of this State, but it is also the general rule in a majority of jurisdictions. *See, e.g., Oberschlake v. Veterinary Associates Animal Hosp.*, 151 Ohio App.3d 741, 785 N.E.2d 811 (2003); *Koester v. VCA Animal Hosp.*, 244 Mich.App. 173, 624 N.W.2d 209 (2000); *Harabes v. Barkery, Inc.*, 348 N.J.Super. 366, 791 A.2d 1142 (2001); *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999); *Zeid v. Pearce*, 953 S.W.2d 368 (Tex.App.1997); *Jason v. Parks*, 224 A.D.2d 494, 638 N.Y.S.2d 170 (1996); *Nichols v. Sukaro Kennels*, 555 N.W.2d 689 (Iowa 1996). *But see Campbell v. Animal Quarantine Station*, 63 Haw. 557, 632 P.2d 1066 (1981); *Knowles Animal Hosp., Inc. v. Wills*, 360 So.2d 37 (Fla.Dist.Ct.App.1978).

■ Accordingly, for clarification purposes, we now hold that dogs are personal property and damages for sentimental value, mental suffering, and emotional distress are not recoverable for the negligently inflicted death of a dog. Since we have found that the damages sought by Ms. Carbasho are not recoverable, we must affirm the final order of the circuit court granting summary judgment to Mr. Musulin.

## IV.

### CONCLUSION

For the reasons set forth above, the final order of the Circuit Court of Brooke County entered on March 31, 2004, is affirmed.

Affirmed.

---

that the Legislature amended the statute as a result of her lobbying efforts. However, she does not contend that the amended statute applies retroactively to her case.

STARCHER, J., dissenting.

This opinion is simply medieval. The majority blithely says that "our law categorizes dogs as personal property"—that "damages for sentimental value, mental suffering, and emotional distress are not recoverable" when one's pet is injured or killed by the negligence of another person. In coming to this conclusion, the majority overlooks the fact that the "law" in question is the common law which is controlled by this Court. There was nothing stopping the majority from changing that common law other than their lack of concern for pet owners and the emotional bonds that exist between owners and their pets.

When the common law of the past is no longer in harmony with the institutions or societal conditions of the present, this Court is constitutionally empowered to adjust the common law to current needs. As we stated in Syllabus Point 1 of *Powell v. Sims*, 5 W.Va. 1 (1871), "[t]he common law of England is in force in this State only so far as it is in harmony with its institutions, and its principles applicable to the state of the country and the condition of society." As Justice Holmes succinctly reflected, "[t]he common law is not a brooding omnipresence in the sky but the articulate voice of some sovereign or quasisovereign that can be identified." *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 222, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (Holmes, J., dissenting).

We have since made clear that our courts retain the power to change the common law, holding in Syllabus Point 2 of *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979) that "Article VIII, Section 13 of the West Virginia Constitution and W.Va.Code, 2–1–1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." *See also*, James Audley McLaughlin, "The Idea of the Common Law in West Virginia Jurisprudential History" *Morningstar v. Black & Decker* Revisited, 103 W.Va.L.Rev. 125 (2000).

The majority opinion notes in footnote 4 that, as far back as 1984, the Legislature permitted a cause of action for the wrongful or unlawful killing or injury of a pet—perhaps suggesting that pet owners could recover emotional distress damages. However, the statute limited the recovery for *dogs* to the "assessed value of such dog," a limitation that was removed by the Legislature in 2003.

Yet the majority opinion continues to maintain the primitive limits of the common law, and refuses to adjust to the realities of the modern world, and permit recovery of damages for sentimental values, mental suffering, or emotional distress.

Today, 63% of all American households have one pet, 45% have more than one. In fact, there are more pets in America than there are citizens (360 million pets, 290 million people). Americans will spend upwards of $36 billion pampering those pets this year, an amount nearly equal to the amount Americans spend on toys and candy *combined*. *See* American Pet Products Manufacturers Association, Inc., *Fact Sheet: Industry Statistics & Trends, www.appma.org.* Beyond question, many Americans love their cats, their dogs, their birds, as well as they love their children. But like the children of the pre-industrial revolution, the majority opinion chooses to categorize those pets as nothing more than chattel.

I was saddened when I read the majority's opinion, and was reminded of an old country music song by Red Foley called "Old Shep:"

When I was a lad
And old Shep was a pup
Over hills and meadows we'd stray
Just a boy and his dog
We were both full of fun
We grew up together that way.
I remember the time at the old swimmin' hole
When I would have drowned beyond doubt
But old Shep was right there
To the rescue he came
He jumped in and then pulled me out.
As the years fast did roll
Old Shep he grew old
His eyes were fast growing dim
And one day the doctor looked at me and said

I can do no more for him Jim.

With hands that were trembling

I picked up my gun

And aimed it at Shep's faithful head

I just couldn't do it

I wanted to run

I wish they would shoot me instead.

He came to my side

And looked up at me

And laid his old head on my knee

I had struck the best friend that a man ever had

I cried so I scarcely could see.

Old Shep he has gone

Where the good doggies go

And no more with old Shep will I roam

But if dogs have a heaven

There's one thing I know

Old Shep has a wonderful home.

I'm sure Groucho has a wonderful home too. I'm sorry, however, that Ms. Carbasho has no remedy for her grief and emotional distress in our common law.

I therefore respectfully dissent.