Seven Day Wholesale Grocery *v.* Jarvis.

(Division A. Oct. 20, 1947.)

[32 So.(2d) 253. No. 36540.]

Maxwell Bramlette, of Woodville, for appellant.

Clay B. Tucker, of Woodville, for appellee.

Roberds, J., delivered the opinion of the court.

Jarvis recovered a judgment against appellant for the value of three heifers and one horse claimed by Jarvis

to have died from eating calcium arsenate, commonly called cotton poison, wrongfully deposited by appellant, so asserted by Jarvis, where said animals were enticed to eat the same.

Appellant, among other contentions on this appeal, urges that the proof is insufficient to establish as a fact that the cattle ate the poison, or that they died from arsenate poison. Since we think that contention is well taken, we discuss no other.

The evidence disclosed that the warehouse of appellant, in which arsenate was stored, was destroyed in whole or in part by fire; that the arsenate became wet and unusable; that much debris remained in the warehouse after the fire. Appellant got permission of a landowner to dump this debris, including the unusable arsenate, into a gulch, or bluff, some thirty feet deep, which the landlord desired filled up. This appellant did by backing the rear end of a truck over the bank of this bluff and sweeping the debris, including the arsenate, from the truck into the bottom of this gulch. There is some effort, by questions, to show that in the process of unloading some of the arsenate was blown onto the bank of this bluff near the truck, but there is no proof of that. In fact, the positive proof is that this did not happen. The arsenate had a salt base and cattle were attracted to it. While the testimony is vague on the question, the impression is created thereby that it was possible for cattle to enter this gulch from the mouth thereof; but there is no clear proof that they could work themselves back into the gulch to the spot where the arsenate was deposited on the bottom thereof.

The three heifers were grazing at large in the vicinity of this bluff. The land was not enclosed. Jarvis contends that the cattle were grazing there by license of the land owner resulting from the common custom of cattle generally to roam over the owner's land, and we will assume that to be correct. Jarvis knew the poison was being so deposited by appellant. He testified that the next

day thereafter (although the time is made uncertain by other evidence) he found the three heifers dead at a distance of seventy to eighty steps from this bluff. The bodies were swollen, and there was a discharge from the noses of the cattle. He testified further that in an effort to discover the cause of the deaths he then examined the terrain from where the cattle lay to the bluff, and also around about the bluff, for tracks or signs indicating the heifers had been to the poison. He frankly states he found no such tracks or signs. He also testified that he was riding a horse when he approached the dead cattle, and he there got off the horse and dropped the bridle reins to the ground, at which spot, it appears, the horse remained while he made the above examination of the premises. Immediately after this examination he remounted the horse and rode toward Woodville, a short distance away; that as he rode to Woodville the horse became ill, and, after receiving home treatment during the night, was dead the next morning. His body was distended and there was a discharge from the nose. No proof was made that body distensions and nose discharges were peculiarly symptoms of arsenate poisoning. A witness for Jarvis, qualified to testify on the subject and the only witness used at the trial who was so qualified, said that the only way it could have been determined that these animals had died from arsenate poison was by chemical analysis of certain organs of the bodies. No such analysis was made. Summed up, the poison was deposited in a thirty-foot gulch; the animals had not been nearer than seventy to eighty steps of the top bank of this gulch, and there is no claim that any poison was that distance from the bank of this bluff. No after-death body deformity indicated death by poison as against other possible causes. In other words, there is no proof that the animals ate poison, or died from poison. On the contrary, the testimony of plaintiff shows affirmatively that they did not eat poison. The burden was upon plaintiff to show that the animals

ate this poison, and died therefrom. Mere proximity of the dead bodies of the cattle to the poison, under the circumstances of this case, is not enough to meet that burden.

Reversed and judgment here for Appellant.