BRUISTER *v.* HANEY, et ux.

No. 40818 May 19, 1958 102 So. 2d 806

528

*Breland & Whitten,* Sumner, for appellant.

*Carlton & Henderson,* Sumner; *Fred Witty,* Greenwood, for appellees.

ETHRIDGE, J.

This is a suit in tort for the poisoning of trespassing cattle. It was brought in the Circuit Court of Tallahatchie County by appellees, Mr. and Mrs. Floy Haney, against the appellant H. W. Bruister. The verdict and judgment for plaintiffs were for $1,000.

The jury was warranted in finding from the evidence the following facts: The Haneys and defendant Bruister have separate unfenced farms about one-quarter of a mile apart. Plaintiffs owned 8 to 10 cattle, and grazed them on their unenclosed oat field, about one-quarter of a mile from the unfenced oat field of Bruister. The Haneys lived upon their farm, and, when their cattle would stray from their field, the Haneys or their employees and neighbors would drive them back to their field. Bruister lived in the Town of Tutwiler, but went to his farm from time to time. Bruister mixed some ''Paris green'', a poison containing arsenic, with whole oats, not small grain or bran, as Bruister claimed. His field was traversed near the south side by a public road. He placed 23 small piles of oats and poison in his field just across the ditch bordering on the north side of the road. These small piles were about 6 feet apart, with oats on the base, then the poison, and oats on top, about 3 inches high. On several occasions in the months preceding the death of the cattle in February 1955, the Haneys' cattle had strayed from their field and had gone into and grazed in Bruister's field, for short periods at least. Bruister protested and told the Haneys to keep them out of his field. He did not tell the Haneys that he was putting out the poison, but he advised Clark and one or two other neighbors that he was setting out poison on the edge of his field to kill insects.

The Haneys' cattle strayed from their pasture, and into the edge of Bruister's field, where they ate some of the piles of oats and poison. From it three of their cows died, and two cows and one bull were injured, sick, and lost considerable weight. The evidence as to damages

warranted a finding of $773 actual damages. The issue of punitive damages was also submitted to the jury, on the theory of an intentional poisoning of the cattle by appellant. The jury's verdict was for $1,000.

Appellant knew that the poison would kill cattle. The jury could also find that the method used was not the recognized and common system of poisoning insects in oat fields; that placing the poison in February was not the recognized and proper time; and the method of setting out the poison was manifestly inadequate or futile; and that the failure to mix molasses with it, coupled with the use of whole grain oats, were not consistent with a purpose of destroying insects. All of the circumstances indicated that in fact appellant did not place the poison in its location by the side of the road on his land for the purpose of poisoning insects, but for the purpose of killing or injuring appellees' cattle, which he knew had been straying on his field. The poison was concealed in the center of the piles of grain, so that only an animal which eats in quantity would be quickly poisoned.

After a farm hand had brought the cattle out of Bruister's field, Mrs. Haney talked with Bruister on the telephone. She wanted to know who put out the poison. She said he replied that he "put it out for the stock. I ain't losing any more." She telephoned him again shortly afterward, and testified: "I asked him 'Do you mean to tell me you put the poison for the cows?' and he said, 'yes'."

With this evidence the jury could find that appellant knew that the Haneys' cattle had been straying onto his field; that he wanted to stop them, so he placed the poison on his premises in this manner with the intent to injure or kill them.

■■ ■ The established rule in this respect is stated in 3 C. J. S., Animals, Sec. 213, page 1330: "In accordance with the general rule that a landowner has no right unnecessarily to kill or injure trespassing animals, . . .

where a person places poisoned food on his premises with the intention to injure or kill animals of others trespassing on his land, he is liable for the injury to or the loss of such animals as may be poisoned by eating the food, although he notifies the owner of the animals of his intention to put out the poisoned food. An owner is not liable for death to trespassing animals from poison on his premises where the poison was intended for another purpose, and he was not guilty of gross or wanton negligence.'' A leading case which is closely analogous to the instant one is Johnson v. Patterson, 14 Conn. 1, 35 Am. Dec. 96 (1840).

The owner of unenclosed lands is not in general bound to keep his premises safe for the trespassing animals of others which are at large, but when he exposes substances calculated to attract animals, he must use ordinary care to protect the animals thus enticed upon the premises. Anno., 33 A. L. R. 448 (1924) ; 2 Am. Jur., Animals, Secs. 122, 123. However, this theory, upon which appellant relies, requiring that the owner must have enticed or attracted the animals by his acts upon his own premises, is not applicable where the poisoned food was placed on the owner's premises with the intention of injuring or killing the animals of others trespassing on his land. 3 C. J. S., Animals, Sec. 213; 2 Am. Jur., Animals, Secs. 122, 123. Cf. Seven-Day Wholesale Grocery v. Jarvis, 202 Miss. 446, 32 So. 2d 253 (1947) ; Miss. Code 1942, Sec. 2329.

██ In view of the above comments, with reference to the intentional placing of poison to injure or kill animals, the instructions granted appellees were proper. Nor was the jury's verdict excessive. The trial court correctly submitted an issue of punitive damages. ██ The evidence as to actual damages was not much less than the total verdict; the punitive damages awarded were modest.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.