# IN THE SUPREME COURT OF TEXAS

════════════

No. 12-0047

════════════

CARLA STRICKLAND, PETITIONER,

v.

KATHRYN AND JEREMY MEDLEN, RESPONDENTS

═══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════════════════

**Argued January 10, 2013**

JUSTICE WILLETT delivered the opinion of the Court.[*]

*Beauty without Vanity,*
*Strength without Insolence,*
*Courage without Ferocity,*
*And all the Virtues of Man without his Vices*[1]

Texans love their dogs. Throughout the Lone Star State, canine companions are treated—and treasured—not as mere personal property but as beloved friends and confidants, even family members. Given the richness that companion animals add to our everyday lives, losing "man's best

---

[*] CHIEF JUSTICE JEFFERSON joins all but footnote 58 and Part II-C of this opinion. JUSTICE JOHNSON joins all but Part II-C.

[1] Lord Byron, *Inscription on the Monument of a Newfoundland Dog*, *in* 7 THE WORKS OF LORD BYRON: WITH HIS LETTERS AND JOURNALS, AND HIS LIFE 292–93 n.2 (Thomas Moore ed., 1832).

friend" is undoubtedly sorrowful. Even the gruffest among us tears up (every time) at the end of *Old Yeller*.[2]

This case concerns the types of damages available for the loss of a family pet. If a cherished dog is negligently killed, can a dollar value be placed on a heartsick owner's heartfelt affection? More pointedly, may a bereaved dog owner recover emotion-based damages for the loss? In 1891, we effectively said no, announcing a "true rule" that categorized dogs as personal property,[3] thus disallowing non-economic damages. In 2011, however, a court of appeals said yes,[4] effectively creating a novel—and expansive—tort claim: loss of companionship for the wrongful death of a pet.

In today's case, involving a family dog that was accidentally euthanized, we must decide whether to adhere to our restrictive, 122-year-old precedent classifying pets as property for tort-law purposes, or to instead recognize a new common-law loss-of-companionship claim that allows non-economic damages rooted solely in emotional attachment, a remedy the common law has denied those who suffer the wrongful death of a spouse, parent, or child,[5] and is available in Texas only by statute.[6]

We acknowledge the grief of those whose companions are negligently killed. Relational attachment is unquestionable. But it is also uncompensable. We reaffirm our long-settled rule,

---

[2] OLD YELLER (Walt Disney 1957).

[3] *Heiligmann v. Rose*, 16 S.W. 931, 932 (Tex. 1891).

[4] 353 S.W.3d 576, 581.

[5] *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) ("common law rule" was that "no cause of action [could] be brought for the death of another person").

[6] TEX. CIV. PRAC. & REM. CODE § 71.002.

2

which tracks the overwhelming weight of authority nationally, plus the bulk of amicus curiae briefs from several pet-welfare organizations (who understand the deep emotional bonds between people and their animals): Pets are property in the eyes of the law, and we decline to permit non-economic damages rooted solely in an owner's subjective feelings. True, a beloved companion dog is not a fungible, inanimate object like, say, a toaster. The term "property" is not a pejorative but a legal descriptor, and its use should not be misconstrued as discounting the emotional attachment that pet owners undeniably feel. Nevertheless, under established legal doctrine, recovery in pet-death cases is, barring legislative reclassification, limited to loss of value, not loss of relationship.

We reverse the court of appeals' judgment and render judgment in favor of the Petitioner.

## I. Factual and Procedural Background

In June 2009, Avery, a mixed-breed dog owned by Kathryn and Jeremy Medlen, escaped the family's backyard and was promptly picked up by Fort Worth animal control. Jeremy went to retrieve Avery but lacked enough money to pay the required fees. The shelter hung a "hold for owner" tag on Avery's cage to alert employees that the Medlens were coming for Avery and ensure he was not euthanized. Despite the tag, shelter worker Carla Strickland mistakenly placed Avery on the euthanasia list, and he was put to sleep.

Jeremy and his two children learned of Avery's fate a few days later when they returned to retrieve him. Devastated, the Medlens sued Strickland for causing Avery's death and sought "sentimental or intrinsic value" damages since Avery had little or no market value and "[could not] be replaced." Strickland specially excepted, contending such damages are unrecoverable in pet-death cases. The trial court directed the Medlens to amend their pleadings to "state a claim for damages

3

recognized at law." The Medlens amended their petition to drop the words "sentimental value" but realleged damages for Avery's "intrinsic value." Strickland specially excepted on the same basis, and the trial court, sure that Texas law barred such damages, dismissed the suit with prejudice.

The court of appeals reversed, becoming the first Texas court to hold that a dog owner may recover intangible loss-of-companionship damages in the form of intrinsic or sentimental-value property damages. Addressing our 1891 decision in *Heiligmann v. Rose*,[7] which pegged dog-loss damages to market value or a value ascertained from the dog's "usefulness and services," the court of appeals stated, "Texas law has changed greatly since 1891" and "sentimental damages may now be recovered for . . . all types of personal property."[8] Specifically, the court said our more recent, non-dog property cases "explicitly held that where personal property has little or no market value, and its main value is in sentiment, damages may be awarded based on this intrinsic or sentimental value."[9] The court of appeals pivoted, too, on our expression in *Heiligmann* that the dogs "were of a special value to the owner,"[10] and took from this phrase that special value "may be derived from the attachment that an owner feels for his pet."[11] Emphasizing these iron truths—that "[d]ogs are unconditionally devoted to their owners"[12] and owners, reciprocally, have a deep attachment "to their

---

[7] 16 S.W. 931.

[8] 353 S.W.3d at 576–80.

[9] *Id*. at 578.

[10] *Id*. at 580 (quoting *Heiligmann*, 16 S.W. at 932).

[11] *Id*.

[12] *Id*.

4

beloved family pets"[13]—the court of appeals declared "the special value of 'man's best friend' should be protected."[14] Thus, given "the special position pets hold in their family, we see no reason why existing law should not be interpreted to allow recovery in the loss of a pet at least to the same extent as any other personal property."[15] Reinstating the Medlens' claim, the court of appeals concluded: "Because an owner may be awarded damages based on the sentimental value of lost personal property, and because dogs are personal property, the trial court erred in dismissing the Medlens' action against Strickland."[16]

This appeal followed, posing a single, yet significant, issue: whether emotional-injury damages are recoverable for the negligent destruction of a dog.[17]

---

[13] *Id.*

[14] *Id.* at 580–81.

[15] *Id.* at 580.

[16] *Id.* at 581.

[17] Though no one disputes that Strickland was acting within the scope of her governmental employment, she did not move for dismissal under section 101.106(f) of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.106(f), to which she would have been entitled, *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011), as the Medlens concede. Instead, she sought dismissal based on her special exceptions, which the trial court sustained. Dismissal under section 101.106(f) is not automatic; Strickland was required to file a motion. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 551 (Tex. 2010); *see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011) ("Substitution of the [governmental body] as the defendant was not automatic; [plaintiff] was required to file a motion."). At the court of appeals, Strickland raised a cross-point urging dismissal on immunity grounds under section 101.106(f). 353 S.W.3d at 581. She requested that if the court of appeals reinstated the Medlens' action, it should remand the case to the trial court where she would file the required motion to dismiss. *Id.* The courts of appeals, however, went straight to the merits and declined to reach Strickland's jurisdictional issue, reasoning that it was remanding anyway by sustaining the Medlens' sole issue on appeal. *Id.* This appeal followed. As Strickland has not satisfied section 101.106(f)'s prerequisites for dismissal, we proceed to the only issue before us, the merits: whether emotion-based damages are recoverable.

5

## II.  Discussion

America is home to 308 million humans[18] and 377 million pets.[19]  In fact, "American pets now outnumber American children by more than four to one."[20]  In a nation where roughly 62% of households own a pet—with about 78 million dogs and 86 million cats (and 160 million fish)[21]—it is unsurprising that many animal owners view their pets not as mere personal property but as full-fledged family members, and treat them as such:

- A study found that 70% of pet owners thought of their pets as family members.[22]

- 45% of dog owners take their pets on vacation.[23]

- Over 50% of pet owners say they would rather be stranded on a deserted island with a dog or cat than with a human.[24]

- 50% of pet owners report being "very likely" to put their own lives in danger to save their pets, and 33% are "somewhat likely" to risk their lives.[25]

---

[18] *State and County Quick Facts*, U.S. CENSUS BUREAU (Mar. 14, 2013, 11:17 AM), http://quickfacts.census.gov/qfd/states/00000.html (listing the 2010 U.S. population as almost 309 million).

[19] *Pet Industry Market Size & Ownership Statistics*, AM. PET PRODS. ASS'N, http://www.americanpetproducts.org/press_industrytrends.asp (last visited Apr. 3, 2013).

[20] JONATHAN V. LAST, WHAT TO EXPECT WHEN NO ONE'S EXPECTING: AMERICA'S COMING DEMOGRAPHIC DISASTER 2 (2013) (noting that as birth rates plummet in America—the so-called "baby bust" generation—pet ownership soars).

[21] *Pet Industry Market Size & Ownership Statistics*, *supra* note 19.

[22] William C. Root, *"Man's Best Friend": Property or Family Member?  An Examination of the Legal Classification of Companion Animals and its Impact on Damages Recoverable for Their Wrongful Death or Injury*, 47 VILL. L. REV. 423, 436 (2002).

[23] *Id.* at 423.

[24] *Id.*

[25] *Id.*

• In 2012, Americans spent roughly $53 billion on their pets.[26]

The human-animal bond is indeed powerful. As the Medlens' second amended petition states: "The entire Medlen family was devastated by the loss of Avery, who was like a family member to them." Countless Texas families share this pets-as-family view, but Texas law, for a century-plus, has labeled them as "property" for purposes of tort-law recovery.

## A. Our Precedent Limits Damages in Dog-Death Tort Cases to "Market Value, If the Dog Has Any," or "Special or Pecuniary Value" Linked to the Dog's "Usefulness and Services"

### 1. Our 1891 Heiligmann *Decision Ties "Special Value" to a Dog's Economic Attributes, Not Subjective or Emotional Considerations*

Our analysis begins with *Heiligmann v. Rose*,[27] our 1891 case upholding $75 in damages for the poisoning of three "well trained" Newfoundland dogs. *Heiligmann* articulated some key valuation principles for animal cases. First, we classified dogs as personal property for damages purposes, not as something giving rise to personal-injury damages.[28] Second, we declared a "true rule" for damages that flags two elements: (1) "market value, if the dog has any,"[29] or (2) "some special or pecuniary value to the owner, that may be ascertained by reference to the usefulness and services of the dog."[30]

---

[26] *Pet Industry Market Size & Ownership Statistics*, *supra* note 19.

[27] 16 S.W. 931.

[28] *Id*. at 932.

[29] *Id*.

[30] *Id*.

7

In *Heiligmann*, the dogs "were of fine breed, and well trained," with one using different barks to signal whether an approaching person was a man, woman, or child. While the owner could sell each dog for $5, they had no market value beyond that, but the Court upheld damages of $25 each:

> There is no evidence in this case that the dogs had a market value, but the evidence is ample showing the usefulness and services of the dogs, and that they were of special value to the owner. If the jury from the evidence should be satisfied that the dogs were serviceable and useful to the owner, they could infer their value when the owner, by evidence, fixes some amount upon which they could form a basis.[31]

The Medlens insist that *Heiligmann* does not limit recovery to an amount based *solely* on the dog's economic usefulness and services. Rather, when the Court mentioned certain dogs lacking market value but having "a special value to the owner," we meant something far broader and distinct from the dogs' commercial attributes. Similarly, argue the Medlens, when the Court in *Heiligmann* noted a dog's "special or pecuniary value to the owner," the word "or" indicates two distinct categories of non-market value dogs—those with a special value to the owner, and those with a pecuniary value to the owner. We disagree.

Given its ordinary, contextual meaning, *Heiligmann* tied the recovery of "special or pecuniary value" to the dogs' "usefulness and services"[32]—their economic value, not their sentimental value. While we referenced evidence "showing the usefulness and services of the dogs, and that they were of a special value to the owner,"[33] the next conditional sentence pegs the jury's valuation decision to the dogs' economic attributes: "If the jury from the evidence should be satisfied that the dogs were

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

serviceable and useful to the owner . . . ."[34]  The decision never references, even by implication, any evidence regarding companionship or owner affection.

Thus, a dog's "special or pecuniary value" refers not to the dog-human bond but to the dollars-and-cents value traceable to the dog's usefulness and services.  Such value is economic value, not emotional value based on affection, attachment, or companionship.  In short, *Heiligmann*'s use of the word "special" does not authorize "special damages" and does not refer generically to a dog's ability to combat loneliness, ease depression, or provide security.  The valuation criteria is not emotional and subjective; rather it is commercial and objective.

2.  *Our Post-*Heiligmann *Cases Do Not Relax the No Emotional-Injury Damages Rule for Animal-Death Cases*

Alternatively, the Medlens assert that three post-*Heiligmann* decisions—*City of Tyler v. Likes*,[35] *Porras v. Craig*,[36] and *Brown v. Frontier Theatres, Inc.*[37]—viewed collectively, entitle property owners to seek intrinsic or sentimental-value damages for certain destroyed property that lacks market value or "special or pecuniary" value.  Because dogs are considered property under Texas law, they should be treated no differently, argue the Medlens.  Accordingly, Avery's intrinsic value to them, including companionship, is recoverable.  We decline to stretch our post-*Heiligmann* decisions this far.

---

[34] *Id.*

[35] 962 S.W.2d 489 (Tex. 1997).

[36] 675 S.W.2d 503 (Tex. 1984).

[37] 369 S.W.2d 299 (Tex. 1963).

9

Our decision a half-century ago in *Brown* involved irreplaceable family heirlooms such as a wedding veil, pistol, jewelry, hand-made bedspreads and other items going back several generations—in other words, family keepsakes that "have their primary value in sentiment."[38] Such one-of-a-kind memorabilia have a "special value . . . to their owner," and damages may factor in "the feelings of the owner for such property."[39] Notably, on the same day we decided *Brown* fifty years ago, we reaffirmed in another case the default damages rule for destroyed non-heirloom property lacking market or replacement value: "the actual worth or value of the articles to the owner . . . excluding any fanciful or sentimental considerations."[40]

While they rely chiefly on *Brown*, the Medlens also cite our decisions in *Porras* and *Likes*, but neither offers much pertinent guidance here. In *Porras*, a landowner sued someone for clearing several large trees from his land.[41] The landowner testified about what the land meant to him and his wife, not in market terms but in personal terms.[42] We recognized that the landowner had been injured by the destruction of trees, even though the property's overall market value may have actually *increased*.[43] We remanded for a new trial to determine the "intrinsic value" of the felled trees—that

---

[38] *Id.* at 304–05.

[39] *Id*. at 305.

[40] *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex. 1963).

[41] 675 S.W.2d at 504.

[42] *Id.* at 505.

[43] *Id.* at 506.

is, its ornamental (aesthetic) value and its utility (shade) value.[44]  That assessment concerning real property is not rooted in an owner's subjective emotions, as here.  While *Porras* permitted recovery of the "intrinsic value" of the trees, the plaintiff did not seek, nor did the Court discuss, the trees' sentimental value.  Here, the Medlens have suffered lost companionship and are seeking, as a form of "intrinsic value" property damages, recovery for Avery's role as a cherished family member.  The court of appeals read too much into *Porras*, which did not import sentimental considerations into measuring "intrinsic value."  And we decline to expand *Porras*'s notion of "intrinsic value" to animal cases, specifically to include the subjective value a dog owner places on his pet's companionship, particularly when *Porras* itself excluded such subjective notions.

*Likes* is likewise uninstructive.  In *Likes*, the plaintiff alleged that a municipality negligently flooded her house and destroyed "many personal irreplaceable items."[45]  The principal issue was whether mental-anguish damages are recoverable for the negligent destruction of personal property. We answered no, though we acknowledged *Brown*'s sentimental-value rule for property of which the "greater value is in sentiment and not in the market place."[46]  Again, mental anguish is a form of personal-injury damage, unrecoverable in an ordinary property-damage case. The Medlens' emotion-based claim is, like the mental-anguish claim in *Likes*, based wholly on negligent damage to personal property.  But *Likes* bars personal-injury-type damages in a case alleging negligent property damage.  In short, neither *Porras* nor *Likes* provides the Medlens much support.  Distilled

---

[44] *See id.*

[45] 962 S.W.2d at 493.

[46] *Id*. at 497 (quoting *Brown*, 369 S.W.2d at 304–05).

11

down, the pivotal question today is straightforward: whether to extend *Brown*'s special rules for family heirlooms to negligently destroyed pets.

*Heiligmann* remains our lone case directly on point, and after a century-plus we are loathe to disturb it. An owner's fondness for a one-of-a-kind, family heirloom is sentimental, existing at the time a keepsake is acquired and based not on the item's attributes but rather on the nostalgia it evokes, but an owner's attachment to a beloved pet is more: It is emotional, formed over time and based on the pet's specific attributes, namely the rich companionship it provided. Pets afford here-and-now benefits—company, recreation, protection, etc.—unlike a passed-down heirloom kept around chiefly to commemorate past events or passed family members. We agree with the amicus brief submitted by the American Kennel Club (joined by several other pet-welfare groups): "While no two pets are alike, the emotional attachments a person establishes with each pet cannot be shoe-horned into keepsake-like sentimentality for litigation purposes." Finally, as explained below, permitting sentiment-based damages for destroyed heirloom property portends nothing resembling the vast public-policy impact of allowing such damages in animal-tort cases.

Loss of companionship, the gravamen of the Medlens' claim, is fundamentally a form of *personal-injury* damage, not property damage. It is a component of loss of consortium, including the loss of "love, affection, protection, emotional support, services, companionship, care, and society."[47] Loss-of-consortium damages are available only for a few especially close family

---

[47] *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990).

12

relationships,[48] and to allow them in lost pet cases would be inconsistent with these limitations.

Therefore, like courts in the overwhelming majority of other states,[49] the Restatement of the Law of

---

[48] *See, e.g.*, *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex. 2003); *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 383–84 (Tex. 1998); *Reagan*, 804 S.W.2d at 467.

[49] *See Mitchell v. Heinrichs*, 27 P.3d 309, 312–14 (Alaska 2001); *Kaufman v. Langhofer*, 222 P.3d 272, 278–79 (Ariz. Ct. App. 2009); *McMahon v. Craig*, 97 Cal. Rptr. 3d 555, 566–68 (Cal. Ct. App. 2009); *Myers v. City of Hartford*, 853 A.2d 621, 626 (Conn. App. Ct. 2004); *Naples v. Miller*, 2009 WL 1163504, at *2–4 (Del. Super. Ct. Apr. 30, 2009), *aff'd*, 992 A.2d 1237 (Del. 2010); *Kennedy v. Byas*, 867 So. 2d 1195, 1198 (Fla. Dist. Ct. App. 2004); *Gill v. Brown*, 695 P.2d 1276, 1277 (Idaho Ct. App. 1985); *Jankoski v. Preiser Animal Hosp., Ltd.*, 510 N.E.2d 1084, 1087 (Ill. App. Ct. 1987); *Lachenman v. Stice*, 838 N.E.2d 451, 461 (Ind. Ct. App. 2005); *Nichols v. Sukaro Kennels*, 555 N.W.2d 689, 691 (Iowa 1996); *Ammon v. Welty*, 113 S.W.3d 185, 187–88 (Ky. Ct. App. 2002); *Kling v. U.S. Fire Ins. Co.*, 146 So. 2d 635, 642 (La. Ct. App. 1962), *overruled in part by Holland v. Buckley*, 305 So. 2d 113, 114 (La. 1974); *Krasnecky v. Meffen*, 777 N.E.2d 1286, 1289–90 (Mass. App. Ct. 2002); *Koester v. VCA Animal Hosp.*, 624 N.W.2d 209, 211 (Mich. Ct. App. 2000); *Fackler v. Genetzky*, 595 N.W.2d 884, 891–92 (Neb. 1999); *Harabes v. Barkery, Inc.*, 791 A.2d 1142, 1145–46 (N.J. Super. Ct. Law Div. 2001); *Wilcox v. Butt's Drug Stores, Inc.*, 35 P.2d 978, 979 (N.M. 1934); *DeJoy v. Niagara Mohawk Power Corp.*, 786 N.Y.S.2d 873, 873 (N.Y. App. Div. 2004) (mem.); *Shera v. N.C. State Univ. Veterinary Teaching Hosp.*, 723 S.E.2d 352, 357–58 (N.C. Ct. App. 2012); *Pacher v. Invisible Fence of Dayton*, 798 N.E.2d 1121, 1125–26 (Ohio Ct. App. 2003); *Oberschlake v. Veterinary Assocs. Animal Hosp.*, 785 N.E.2d 811, 812–15 (Ohio Ct. App. 2003); *Lockett v. Hill*, 51 P.3d 5, 7–8 (Or. Ct. App. 2002); *Daughen v. Fox*, 539 A.2d 858, 864–65 (Pa. Super. Ct. 1988); *Rowbotham v. Maher*, 658 A.2d 912, 912–13 (R.I. 1995); *Scheele v. Dustin*, 998 A.2d 697, 700–04 (Vt. 2010); *Goodby v. Vetpharm, Inc.*, 974 A.2d 1269, 1273–74 (Vt. 2009); *Kondaurov v. Kerdasha*, 629 S.E.2d 181, 187 (Va. 2006); *Sherman v. Kissinger*, 195 P.3d 539, 548, 549 n.9 (Wash. Ct. App. 2008); *Carbasho v. Musulin*, 618 S.E.2d 368, 370–71 (W.Va. 2005); *Rabideau v. City of Racine*, 627 N.W.2d 795, 798–99, 801–02 (Wis. 2001). *But see Knowles Animal Hosp., Inc. v. Wills*, 360 So. 2d 37, 38 (Fla. Dist. Ct. App. 1978) (per curiam); *Barrios v. Safeway Ins. Co.*, 97 So. 3d 1019, 1022–24 (La. Ct. App. 2012); *Corso v. Crawford Dog & Cat Hosp., Inc.*, 97 Misc.2d 530, 530–31 (N.Y. Civ. Ct. 1979).

13

Torts,[50] and the other Texas courts of appeals that have considered this question,[51] we reject emotion-based liability and prohibit recovery for loss of the human-animal bond.

We do not dispute that dogs are a special form of personal property. That is precisely why Texas law forbids animal cruelty generally (both civilly[52] and criminally[53]), and bans dog fighting[54] and unlawful restraints of dogs specifically[55]—because animals, though property, are unique. Most dogs have a simple job description: provide devoted companionship. We have no need to overrule *Brown*'s narrow heirloom exception today; neither do we broaden it to pet-death cases and enshrine

---

[50] RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM § 47 cmt. m (2012)(emphasis in original):

> Recovery for emotional harm resulting from negligently caused harm to personal property is not permitted under this Section. Emotional harm due to harm to personal property is insufficiently frequent or significant to justify a tort remedy. While pets are often quite different from other chattels in terms of emotional attachment, an actor who negligently injures another's pet is not liable for emotional harm suffered by the pet's owner. This rule against liability for emotional harm secondary to injury to a pet limits the liability of veterinarians in the event of malpractice and serves to make veterinary services more readily available for pets. Although harm to pets (and chattels with sentimental value) can cause real and serious emotional harm in some cases, lines—arbitrary at times—that limit recovery for emotional harm are necessary. Indeed, injury to a close personal friend may cause serious emotional harm, but that harm is similarly not recoverable under this Chapter. However, recovery for *intentionally* inflicted emotional harm is not barred when the defendant's method of inflicting harm is by means of causing harm to property, including an animal. See § 46, Comment *d*.

[51] In the 122 years since *Heiligmann*, five Texas courts of appeals have decided dog-death cases, and all but one (the court of appeals in this case) have concluded that Texas law prohibits non-economic damages. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554 (Tex. App.—Austin 2004, no pet.); *Zeid v. Pearce*, 953 S.W.2d 368 (Tex. App.—El Paso 1997, no writ); *Bueckner v. Hamel*, 886 S.W.2d 368 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Young's Bus Lines, Inc. v. Redmon*, 43 S.W.2d 266 (Tex. App.—Beaumont 1931, no writ).

[52] TEX. HEALTH & SAFETY CODE §§ 821.021–.026.

[53] TEX. PENAL CODE § 42.09–.092.

[54] *Id*. § 42.10.

[55] TEX. HEALTH & SAFETY CODE §§ 821.076–.081.

14

an expansive new rule that allows recovery for what a canine companion meant to its owner. The

Medlens find it odd that Texas law would permit sentimental damages for loss of an heirloom but

not an Airedale. Strickland would find it odd if Texas law permitted damages for loss of a Saint

Bernard but not for a brother Bernard. The law is no stranger to incongruity, and we need not

jettison *Brown* in order to refuse to extend it to categories of property beyond heirlooms.

The "true rule" in Texas remains this: Where a dog's market value is unascertainable, the

correct damages measure is the dog's "special or pecuniary value" (that is, its actual value)—the

economic value derived from its "usefulness and services,"[56] not value drawn from companionship

or other non-commercial considerations.[57]

We recognize that the benefit of most family dogs like Avery is not financial but relational,

and springs entirely from the pet's closeness with its human companions. Measuring the *worth* of

a beloved pet is unquestionably an emotional determination—what the animal *means* to you and your

family—but measuring a pet's *value* is a legal determination. We are focused on the latter, and as

---

[56] *Heiligmann*, 16 S.W. at 932.

[57] *Id.* The Texas rule falls squarely within the national mainstream, which cuts overwhelmingly against sentimental-damages recovery. As noted earlier, most other states likewise do not allow pet owners to recover emotional-injury damages. *See supra* note 49. "Fair market value" remains the predominant measure of damages nationally. Some courts, though, have adopted an "actual value" approach when market value for the animal (1) is nonexistent, (2) cannot be ascertained, or (3) is not a true measure of its worth. *See, e.g.*, *Mitchell*, 27 P.3d at 313–14; *Jankoski*, 510 N.E.2d at 1087; *Brousseau v. Rosenthal*, 443 N.Y.S.2d 285, 286 (N.Y. Civ. Ct. 1980); *Shera*, 723 S.E.2d at 357–58; *Sokolovic v. Hamilton*, 960 N.E.2d 510, 513 (Ohio Ct. App. 2011); *McDonald v. Ohio State Univ. Veterinary Hosp.*, 67 Ohio Misc. 2d 40, 42–43 (Ohio Ct. Cl. 1994). Other jurisdictions have permitted punitive damages where the wrongdoer injured or killed an animal with malice. *See* CAL. CIV. CODE § 3340 (West 2012); *Martinez v. Robledo*, 147 Cal. Rptr. 3d 921, 926 (Cal. Ct. App. 2012); *Plotnik v. Meihaus*, 146 Cal. Rptr. 3d 585, 600 (Cal. Ct. App. 2012); *Bruister v. Haney*, 102 So. 2d 806, 807 (Miss. 1958).

a matter of law an owner's affection for a dog (or ferret, or parakeet, or tarantula) is not compensable.[58]

## B. Compelling Pet Welfare and Social-Policy Reasons Counsel Against Permitting Emotion-Based Damages in Dog-Death Cases

This is a significant case not only for pet owners but also, as several animal-welfare groups underscore, for pets themselves. Appreciating this case's significant implications, numerous animal-advocacy organizations have submitted amicus curiae briefs. And while there is no unanimous "pro-pet" position—organizations committed to animal well-being are arrayed on both sides[59]—the vast majority of pet-friendly groups oppose the Medlens' request for emotion-based damages,[60] lest

---

[58] While actual value cannot include the owner's "feelings," unlike *Brown*'s narrow exception for one-of-a-kind heirlooms, 369 S.W.2d at 305, it *can* include a range of other factors: purchase price, reasonable replacement costs (including investments such as immunizations, neutering, training), breeding potential (if any), special training, any particular economic utility, veterinary expenses related to the negligent injury, and so on. *See Mitchell*, 27 P.3d at 313–14; *see also Heiligmann*, 16 S.W. at 932 (taking into account breed and special training in determining damages); *Nichols*, 555 N.W.2d at 692 ("In determining the measure of damages for injuries to a dog, factors include its market value, which may be based on purchase price, relatively long life of breed, its training, usefulness and desirable traits." (quoting 4 AM. JUR. 2d *Animals* § 162 (1964))). Emotional attachment, however, is not a component of actual value.

[59] Supporting the Medlens (and thus favoring emotional-injury damages) are the Texas Dog Commission (TDC) and a group of law professors. The TDC says the court of appeals' decision follows *Heiligmann* and tracks prevailing law. The law professors say *Heiligmann* divided personal property into three categories, "based on where the greatest value of the property lies"—(1) personal property with market value, (2) personal property with use value, and (3) personal property that has sentiment as its primary value—"and created a different damages test for each." This case, they contend, falls neatly within category three in light of our post-*Heiligmann* cases that allow intrinsic value when market or pecuniary valuations are out of place.

[60] Supporting Strickland (and thus opposing emotional-injury damages) are the Texas Municipal League, the Texas City Attorneys Association, and the City of Arlington, Texas (collectively "Municipal Amici"); the American Kennel Club, Cat Fanciers' Association, Animal Health Institute, American Veterinary Medical Association, National Animal Interest Alliance, American Pet Products Association, and Pet Industry Joint Advisory Council (collectively "AKC"); the Texas Veterinary Medical Association (TVMA); the Texas Civil Justice League (TCJL); and the Property Casualty Insurers Association of America, American Insurance Association, and National Association of Mutual Insurance Companies (collectively "Insurer Amici").

The Municipal Amici argue the court of appeals' ruling essentially allows "wrongful death" damages for dogs that are barred for human beings. Also, such damages would irrationally expose to unrestricted damages municipalities, veterinarians, and other service providers who must make difficult, on-the-fly decisions in the field. The AKC warns that allowing such liability will necessarily increase the costs of pet "health care, pet products, and other pet services."

greater liability raise the cost of pet ownership and ultimately cause companion animals more harm than good.

Several animal-welfare groups—organizations that understand the intense grief and despair occasioned by a pet's death—insist that relational-injury damages would adversely impact pet welfare. For example, the American Kennel Club, joined by the Cat Fanciers' Association and other pro-animal nonprofits, worry that "pet litigation will become a cottage industry," exposing veterinarians, shelter and kennel workers, animal-rescue workers, even dog sitters, to increased liability: "Litigation would arise when pets are injured in car accidents, police actions, veterinary visits, shelter incidents, protection of livestock and pet-on-pet aggression, to name a few." As risks and costs rise, there would be fewer free clinics for spaying and neutering, fewer shelters taking in animals, fewer services like walking and boarding, and fewer people adopting pets, leaving more animals abandoned and ultimately put down. The Texas Veterinary Medical Association sounds alarms of "vast unintended consequences," asserting its members would have no choice but to practice defensive medicine "to safeguard against potential claims of malpractice." The unfortunate outcome, they contend, would be higher prices for veterinary care, thus fewer owners bringing in their pets for needed treatment. Families, particularly lower-income families, will avoid preventive care for their pets, not seek needed care for ill or injured pets, and be more apt to euthanize a pet.

---

The TVMA says allowing emotion-based damages may actually harm pets "by driving up the basic costs of pet ownership," and that litigation and insurance costs will cause veterinarians to boost prices to offset the threat of noneconomic damages. The TCJL contends such damages offend well-settled law, put Texas jurisprudence far outside the mainstream, and force a radical policy change better left to the Legislature. The Insurer Amici assert that allowing subjective, emotional-injury damages for harmed personal property will skew "the underwriting of risk, the setting of rates, and the payment of claims." This abrupt imbalance, they argue, will impact not only veterinary insurance, but insurance more generally, particularly homeowner's and automobile coverage.

The Texas Municipal League and other government associations worry about police officers and animal-service employees being second-guessed for split-second decisions they must make in the field when they encounter loose and potentially dangerous animals. Not all dogs are good-natured, they warn, and government workers must be free to take swift action to protect citizens rather than worrying about lawsuits that, even if successfully defended, drain finite taxpayer resources. Various insurance groups caution that expanded damages would spike the cost of insurance across the board, not just for veterinarians but also for homeowners and automobile drivers, "inflat[ing] the value of property loss far above that which insurance contracts have been written to cover with serious consequences for the affordability and availability of insurance in Texas."

The opposing amici, including the Texas Dog Commission and eleven Texas law professors, emphasize that the court of appeals' judgment is consistent with our post-*Heiligmann* property-valuation precedent, which they contend allows for sentimental-value damages for the loss of a dog. On this heirloom point, the Medlens pose a unique hypothetical, asserting they could seek sentimental damages if a *taxidermied* Avery had been negligently destroyed. If property is property, and if they could seek sentimental value for a stuffed Avery destroyed long after death, why can't they recover for a euthanized Avery destroyed while alive? For the reasons stated above and below, we are unpersuaded.

A decade ago we explained: "When recognizing a new cause of action and the accompanying expansion of duty, we must perform something akin to a cost-benefit analysis to assure that this

expansion of liability is justified."[61]  On this score, the pet-welfare amici make a forceful case.

While recognizing that dogs are treasured companions whose deaths generate tremendous sorrow,

we are persuaded that allowing loss-of-companionship suits raises wide-reaching public-policy

implications that legislators are better suited to calibrate.  Our carefulness is augmented by two legal-

policy concerns: (1) the anomaly of elevating "man's best friend" over multiple valuable human

relationships; and (2) the open-ended nature of such liability.

The court of appeals' decision works a peculiar result, effectively allowing "wrongful death"

damages for pets.  Loss of companionship is a component of loss of consortium[62]—a form of

personal-injury damage, not property damage—and something we have "narrowly cabined" to two

building-block human relationships: husband-wife[63] and parent-child.[64]  The Medlens request

something remarkable: that pet owners have the same legal footing as those who lose a spouse,

parent, or child.

Moreover, they seek damages they plainly could not seek if other close relatives (or friends)

were negligently killed: siblings, step-children, grandparents, dear friends, and others.[65]  Our cases

reject loss-of-consortium recovery for such losses.  Losing one's pet, even one considered family,

---

[61] *Roberts*, 111 S.W.3d at 118.

[62] *See Reagan*, 804 S.W.2d at 467.

[63] *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978).

[64] *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551 (Tex. 1985) (allowing a child to recover loss-of-companionship damages when a parent dies), *overruled in part on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 533 (Tex. 1998); *Sanchez v. Schindler*, 651 S.W.2d 249, 252–53 (Tex. 1983) (allowing a parent to recover such damages when a child dies).

[65] *See Miles*, 967 S.W.2d at 382–84 (refusing to allow loss-of-consortium recovery by siblings and step-parents).

19

should not invite damages unavailable if an actual human family member were lost. Put differently, the Medlens seek emotion-based damages for the death of "man's best friend" when the law denies such damages for the death of a human best friend. For all their noble and praiseworthy qualities, dogs are not human beings, and the Texas common-law tort system should not prioritize human-animal relationships over intimate human-human relationships, particularly familial ones. Analogous would be anomalous.

It would also invite seemingly arbitrary judicial line-drawing. Certainly, if we anointed a common-law claim for loss of pet companionship, we could prescribe limits, but the issue is not whether the Court *can* draw lines, but whether it *should*. After all, people form genuine bonds with a menagerie of animals, so which "beloved family pets" (the court of appeals' description[66]) would merit such preferred treatment? Domesticated dogs and cats only (as in a Tennessee statute[67])? Furry, but not finned or feathered? What about goldfish? Pythons? Cockatiels? There seems to be no cogent stopping point, at least none that doesn't resemble judicial legislation.

Similarly, while statutory damage caps exist in various types of cases involving people, the court of appeals' decision leaves matters wholly unconfined. Such broad, unstructured liability would invite peculiar results. Under *Heiligmann*, for example, if a Westminster best-of-breed champion with a $20,000 market value is negligently destroyed, that would be its owner's top-end recovery. But if a 15-year-old frail dog with no market value dies, the owner could sue for unlimited

---

[66] 353 S.W.3d at 580.

[67] TENN. CODE ANN. § 44-17-403 (2012).

emotional-injury damages. We could impose damages limits, but such fine-tuning is more a legislative function than a judicial one. The Medlens and amici urge a damages model based on a pet's primary value, but that, too, invites gamesmanship. The owner of a well-trained dog with legitimate market or pecuniary value, like a service animal, would be better off saying his beloved pet was a "worthless mutt" (to avoid a less-rewarding recovery under *Heiligmann*), yet a lovable, part-of-the-family mutt that the owner adored with all his heart (to maximize sentimental damages under *Brown*). Our tort system cannot countenance liability so imprecise, unbounded, and manipulable.

### C. The Legislature Is Best Equipped to Weigh and Initiate Broad Changes to Social and Civil-Justice Policy, Including Whether to Liberalize Damages Recovery in Pet-Death Cases

The Medlens seek a sweeping alteration of Texas tort-law principles, upending a century-plus of settled rights, duties, and responsibilities. The judiciary, however, while well suited to adjudicate individual disputes, is an imperfect forum to examine the myriad policy trade-offs at stake here. Questions abound: who can sue, who can be sued, for what missteps, for what types of damages, for how much money? And what of the societal ripple effects on veterinarians, animal-medicine manufacturers, homeowners and drivers seeking insurance, pet owners, pet caretakers, and ultimately pets themselves? Animal-death suits portend fundamental changes to our civil-justice system, not incremental adjustments on a case-by-case basis. They require detailed findings and eligibility criteria, which in turn require the careful balancing of a range of views from a range of perspectives, something best left to our 181-member Legislature. If lawmakers wish, they can hold hearings and

21

then, after hearing testimony and weighing arguments, craft meticulous, product-of-compromise legislation that allows non-economic damages to a controllable and predictable degree.

We also draw counsel from the history of Texas common law, which, though it has allowed sentimental damages for the loss of an heirloom, has not done so for the loss of a person, instead deferring to the Legislature. One explanation is that with heirlooms, the value is sentimental; with people, the value is emotional. The reason the common law historically declined to create a wrongful-death action is not because the common law is incapable of setting reasonable parameters, or because such parameters are impossible or necessarily capricious. Rather it is because such parameters are most optimally informed by policy- and value-laden judgments the Legislature is best equipped to make. The difficulties of measuring damages for the loss of human life and identifying the beneficiaries entitled to recover were deemed by the common law too great. Because the judiciary was an imperfect decider, courts decided legislatures should decide. And our Legislature did so, authorizing a statutory wrongful-death action for reasons it was better suited to gauge.[68] Having historically declined to recognize a common-law action for the loss of a human, the common law should not, for mostly the same reasons, recognize one for the loss of a pet.

Our precedent on the legal valuation of companion animals has endured for 122 years, and while we decline today to expand the damages available to bereaved pet owners, we understand the strength of the human-animal bond. Few Texans consider their pets throw-away commodities. Perhaps the Legislature will enact a more generous valuation formula for family pets. Valuation

---

[68] *See* TEX. CIV. PRAC. & REM. CODE §§ 71.001–.011 (current version of the Texas wrongful-death statute).

22

derives fundamentally from values, and elected legislators may favor scrapping the "property" label and reclassifying companion pets as something more elevated. The Legislature has passed a wrongful-death statute for humans; it has not (yet) for animals. Given the competing public-policy considerations, we believe if there is to be expanded recovery in pet-death cases, it, too, should be confronted legislatively, not judicially.

In 2000, Tennessee enacted legislation authorizing non-economic damages, up to $5,000, when someone negligently or intentionally kills a companion animal.[69] The T-Bo Law[70] (named for the senate sponsor's beloved Shih Tzu)[71] narrowly defines "pet" as a domesticated dog or cat, limits recovery to "the deceased pet's owner or caretaker," and immunizes veterinarians and animal shelters from negligence liability.[72] The Maryland Legislature has likewise limited damages in pet cases, restricting damages to fair market value plus the necessary costs of veterinary care, not to exceed $7,500 total.[73] An Illinois statute allows non-economic damages, but it, too, tries to narrow them, allowing emotional-distress recovery only in cases of aggravated cruelty or torture or when an animal is injured or killed in bad faith when seized or impounded.[74] That is, it forbids non-economic damages for acts of ordinary negligence.

---

[69] TENN. CODE ANN. § 44-17-403 (2012).

[70] 2000 Tenn. Pub. Acts Ch. 762.

[71] *See* Susan Cover, *Maine Bill Would Raise Status of Pets That Are Killed*, PORTLAND PRESS HERALD (Feb. 15, 2013), http://www.pressherald.com/politics/bill-would-raise-status-of-pets-that-are-killed_2013-02-16.html.

[72] TENN. CODE ANN. § 44-17-403.

[73] MD. CODE ANN., CTS. & JUD. PROC. § 11-110 (2012).

[74] 510 ILL. COMP. STAT. ANN. 70/16.3 (West 2013).

As a matter of Texas common law, emotion-based damages are unrecoverable, but whether to permit such liability statutorily is a quintessential legislative judgment. Societal attitudes inexorably change, and shifting public views may persuade the Legislature to extend wrongful-death actions to pets. Amid competing policy interests, including the inherent subjectivity (and inflatability) of emotion-based damages, lawmakers are best positioned to decide if such a potentially costly expansion of tort law is in the State's best interest, and if so, to structure an appropriate remedy.

### III. Conclusion

*To his dog, every man is Napoleon;*
*hence the constant popularity of dogs.*[75]

It is an inconvenient, yet inescapable, truth: "Tort law . . . cannot remedy every wrong."[76] Lines, seemingly arbitrary, are required. No one disputes that a family dog—"in life the firmest friend"[77]—is a treasured companion. But it is also personal property, and the law draws sensible, policy-based distinctions between types of property. The majority rule throughout most of America—including Texas since 1891—leavens warm-heartedness with sober-mindedness, applying a rational rule rather than an emotional one. For the reasons discussed above, we decline to (1) jettison our 122-year-old precedent classifying dogs as ordinary property, and (2) permit non-economic damages rooted in relational attachment.

---

[75] Aldous Huxley, *as quoted in* ROBERT ANDREWS, THE CONCISE COLUMBIA DICTIONARY OF QUOTATIONS 83 (1990).

[76] *Roberts*, 111 S.W.3d at 118.

[77] Lord Byron, *supra* note 1, at 293.

Under Texas common law, the human-animal bond, while undeniable, is uncompensable, no matter how it is conceived in litigation—as a measure of property damages (including "intrinsic value" or "special value . . . derived from the attachment that an owner feels for his pet"[78]), as a personal-injury claim for loss of companionship or emotional distress, or any other theory. The packaging or labeling matters not: Recovery rooted in a pet owner's feelings is prohibited. We understand that limiting recovery to market (or actual) value seems incommensurate with the emotional harm suffered, but pet-death actions compensating for such harm, while they can certainly be legislated, are not something Texas common law should enshrine.

We reverse the court of appeals' judgment and render judgment in favor of Strickland.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** April 5, 2013

---

[78] 353 S.W.3d at 580.