**Affirmed and Opinion filed September 27, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00472-CV

### RITA PALFREYMAN, Appellant

### V.

### BECKY GACONNET AND LESLIE JONES, Appellees

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 82674-CV**

## O P I N I O N

This appeal presents the question of whether companion animals—pet dogs—can be considered "stock" for purposes of awarding attorney's fees pursuant to Texas Civil Practice and Remedies Code section 38.001(6) in lawsuits concerning their injury or death. Concluding that dogs owned by an individual solely for companionship are not stock for purposes of the statute, we affirm the trial court's refusal to award attorney's fees in this case.

## *Background*

Appellant Rita Palfreyman was awarded actual damages for the untimely deaths of two of her dogs while they were boarded at Dog Gone Good, the business of appellees Becky Gaconnet and Leslie Jones, but the trial court denied Palfreyman the attorney's fees she incurred in pursuing the case. In her original petition, Palfreyman asserted claims for negligence, negligence per se, and gross negligence. Among other relief, she requested payment of her attorney's fees pursuant to section 38.001(6), which provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (6) killed or injured stock." Tex. Civ. Prac. & Rem. Code § 38.001(6).

Appellees filed a motion for summary judgment asserting, among other things, that Palfreyman could not recover attorney's fees under section 38.001(6) because her dogs were not "stock" as that term is used in the statute. Among their arguments, appellees pointed out that in her deposition, Palfreyman acknowledged that both of the deceased dogs were neutered, had not been used by Palfreyman to breed, show, or otherwise make money, were not for sale, and had no special economic value beyond the personal value to Palfreyman. The trial court granted partial summary judgment on this issue.[1]

Palfreyman then filed her second amended petition, adding a claim for "negligence per se" based on the bailment relationship between herself as bailor and appellees as bailees. The trial court struck this pleading as untimely. However, at the conclusion of the bench trial, the judge agreed with Palfreyman that the

---

[1] The trial court additionally granted partial summary judgment against Palfreyman's requests for certain types of damages, including for loss of companionship, pain and mental anguish, and medical expenses. Palfreyman does not challenge these rulings on appeal.

bailment claim had been tried by consent. The judge therefore permitted Palfreyman to file her third amended petition to add the claim related to bailment.[2] As with her second amended petition, Palfreyman's third amended petition referred to the bailment-based cause of action as "negligence per se."

Also at the conclusion of trial, Palfreyman requested that the trial court reconsider the refusal to award attorney's fees. The trial court denied this request but permitted Palfreyman's attorney to present a bill of exceptions in which she demonstrated that Palfreyman paid over $7,000 in attorney's fees for prosecution of the case through trial.

The trial court awarded Palfreyman $900 in actual damages for the loss of her two dogs plus court costs and interest but denied any recovery of Palfreyman's attorney's fees. The trial court did not specifically state under which claim the actual damages were awarded. Findings of fact and conclusions of law were neither requested nor filed.

In three issues, Palfreyman contends that attorney's fees are recoverable for the loss of her dogs because the animals constituted "stock" under section 38.001(6) of the Civil Practice and Remedies Code.[3] In a reply brief, appellant asserts an alternative ground for the recovery of her attorney's fees.

### *Governing Law*

As a general matter, Texas law prohibits the recovery of attorney's fees incurred in prosecuting or defending a lawsuit unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).

---

[2] The trial judge expressed concern that the third amended petition added other material and expressly permitted the petition only to the extent it added the claim based on bailment.

[3] Palfreyman's three issues ask: (1) Does Texas law allow recovery of attorney's fees for death or injury to stock? (2) What is stock? and (3) Does Texas law allow recovery of attorney's fees for death or injury to a dog?

An issue concerning the availability of attorney's fees under a statute or a contract presents a question of law we review de novo. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Appellant claims entitlement to attorney's fees under a statute.

Our primary objective in construing the statute is to give effect to the legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We give terms that are not statutorily defined their ordinary and common meaning unless the context suggests the Legislature intended a different or more technical meaning or unless such a construction would lead to an absurd result. *Colorado Cty. v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017). We read words and phrases in context and construe them according to the rules of grammar and common usage. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). "In determining the ordinary and common meaning of an undefined word in a statute, we may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions." *Colorado Cty.*, 510 S.W.3d at 448.

### *Are Pet Dogs "Stock"?*

Our analysis begins with the statute's words and their apparent meanings within context. The Civil Practice and Remedies Code provides no definition for the key term in the provision at issue, "stock." As both Palfreyman and appellees agree, the context of section 38.001(6) requires us to define "stock" to reference something that at one point was living, as the modifiers "killed" and "injured" do not make much sense when applied to inanimate objects. Further, we keep in mind that Palfreyman is referring to her dogs, rather than cattle or fish or other species.

4

Therefore, we will confine our analysis to relevant definitions of the multi-purpose term "stock."[4]

Although the use of the term "stock" in Texas statutory law is scant, the term "livestock" has been legislatively defined to include "(A) cattle, sheep, swine, goats, ratites, or poultry commonly raised for human consumption; (B) a horse, pony, mule, donkey, or hinny; (C) native or nonnative hoofstock raised under agriculture practices; [and] (D) native or nonnative fowl commonly raised under agricultural practices." Tex. Penal Code § 42.09(b)(5) (criminalizing cruelty to livestock). The Penal Code also offers a definition for "nonlivestock animals": "a domesticated living creature, including any stray or feral cat or dog, and a wild living creature previously captured. The term does not include an uncaptured wild living creature or a livestock animal." *Id.* § 42.092 (criminalizing cruelty to "nonlivestock animals"). Under these definitions, a neutered dog kept solely for companionship would not be considered livestock.

The American Heritage Dictionary offers the following relevant definition for "stock": "All the animals kept or raised on a farm; livestock." American Heritage Dictionary 1198–99 (5th ed. 2018). The Oxford English Dictionary offers a similar relevant definition: "Farm animals such as cattle, pigs, and sheep, bred and kept for their meat or milk; livestock," Oxford English Dictionary 819 (2nd ed. 1989). Neither of these definitions would include Palfreyman's pets.

Palfreyman, however, urges a much broader definition of "stock." She asserts that none of the common usage definitions accurately convey the meaning intended in the statute. She offers the following definition: "stock" means "any living species of plant, animal or organism that is owned, controlled, or possessed

---

[4] Neither party has directed us to a judicial construction of the term "stock" to guide us.

by a person or legally recognized entity, that was or is cultivated or selected to a generally accepted standard, and for the specific intent of having a cognizable purpose or personal benefit." She does not support her definition with any citation that would suggest it is the ordinary or common meaning of "stock."

To support her proffered definition, Palfreyman instead emphasizes the legislative instruction that chapter 38 of the Civil Practice and Remedies Code should be "liberally construed to promote its underlying purposes." Tex. Civ. Prac. & Rem. Code § 38.005. Palfreyman asserts that a liberal reading of section 38.001(6) would include her pet dogs. However, as we have held, a liberal construction does not permit a court to add new claims to section 38.001 for the recovery of attorney's fees. *See Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 638 (Tex. App.—Houston [14th Dist.] 2004, pet. abated). Palfreyman also cites other appearances of the word "stock" in the Texas Constitution and Texas statutes. However, none of these citations identify a technical or statutory meaning for "stock" outside of the common usage already discussed. Palfreyman first cites article XVI, section 23 of the Texas Constitution, which provides in part that:

> [t]he Legislature may pass laws for the regulation of live stock and the protection of stock raisers in the stock raising portion of the State . . . ; and shall have power to pass general and special laws for the inspection of cattle, stock and hides and for the regulation of brands . . . .

Tex. Const. art. XVI, § 23. Palfreyman suggests that the use of "live stock" and "stock" in the same sentence suggests that the terms were intended to have different definitions. We disagree. The use of the word "stock" was simply as a short-hand reference to "live stock" and was not intended to convey a different meaning.

6

Palfreyman further cites the use of the term "stock" in the Texas Agricultural Code, Texas Parks and Wildlife Code, and Texas Water Code, but none of the cited usages include pet dogs or utilize definitions not included within the common usage definitions of the term. *See* Tex. Agric. Code § 71.041(5) (defining "[n]ursery stock weather protection unit" as a type of cover for protecting plants intended for sale or lease); Tex. Parks & Wild. Code § 43.551 (authorizing the licensing of fish farmers to take "fish brood stock" from public waters); Tex. Water Code §§ 36.001(8), (9), (22) (including the term "stock raising" in definitions for "waste" and "use for a beneficial purpose" and the term "stock" in the definition of "nursery grower" in the Groundwater Management section of the Code).

Palfreyman also suggests that dogs are "stock" synonymous with livestock, as they are often bred for sale and sold, sometimes at facilities known as "puppy farms" and sometimes live and work on agricultural farms and ranches. Although these scenarios raise interesting issues, they do not describe the situation presented here. As Palfreyman acknowledged in her deposition testimony, her pet dogs were kept solely as companion animals. They were neutered, were not for sale, and did not work on a farm or ranch.

We conclude the term "stock" in section 38.001(6) does not include pet dogs. Accordingly, Palfreyman was not entitled to attorney's fees pursuant to section 38.001(6).[5] We therefore overrule her three issues.

### *Reply Brief*

We additionally note that Palfreyman filed two reply briefs in which she

---

[5] There is no question that Palfreyman's dogs were of great worth to her; however, that does not change the language of the statute upon which she relies. *See Strickland v. Medlen*, 397 S.W.3d 184, 185-86, 192-93 (Tex. 2013).

asserted in the alternative that she was entitled to recover her attorney's fees because such fees may be awarded in a bailment action, citing *Allright, Inc. v. Guy*, 696 S.W.2d 603, 605 (Tex. App.—Corpus Christi, 1985, no writ) (considering whether attorney's fees could be recovered in bailment action under predecessor statute to Tex. Civ. Prac. & Rem. Code § 38.001(8)) (authorizing attorney's fees for claim under oral or written contract)).[6] However, because Palfreyman did not raise this contention in her initial brief and it is not subsumed within the issues raised in her initial brief, we need not and do not address her contention regarding section 38.001(8) in this appeal. *See* Tex. R. App. P. 38.3; *Pochron v. Oleksy*, No. 14-12-00650-CV, 2014 WL 494894, at *5 (Tex. App.—Houston [14th Dist.] Feb. 6, 2014, no pet.) (mem. op.); *Swaab v. Swaab*, 282 S.W.3d 519, 527, n.10 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

We affirm the trial court's judgment.


/s/      Martha Hill Jamison
         Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison.

---

[6] Section 38.001 generally permits the recovery of attorney's fees in **contract** actions. Tex. Civ. Prac. & Rem. Code § 38.001(8). A claim based on a bailment can be brought either as a contract claim or as a tort claim, depending on the particular facts of the case and the type of action the plaintiff chooses to assert. *See, e.g., Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006) (citing *Elder, Dempster & Co. v. St. Louis Sw. Ry. Co.,* 105 Tex. 628, 154 S.W. 975, 987–88 (1913) (examining plaintiff's pleadings to determine whether a claim for breach of bailment agreement sounded in tort or contract)). In her third amended petition, Palfreyman explicitly raised her bailment action as a form of negligence, claiming that because the bailors (defendants) failed to return her property, "there is a presumption of negligence."