# IN THE COURT OF APPEALS OF IOWA

No. 25-0076
Filed December 17, 2025

PHILIP BAXTER WEST JR.,
   Plaintiff-Appellant,

vs.

SOPHIA LYN STAFFORD,
   Defendant-Appellee.
_____

   Appeal from the Iowa District Court for Warren County, David Faith, Judge.


   A pedestrian injured in a car accident appeals the denial of his motion for new trial or additur.  **AFFIRMED.**


   Robert L. Stuyvesant and Nicholas A. Carda of Stuyvesant, Strong, Krapfl & Carda P.L.L.C., Carlisle, for appellant.

   Mark W. Thomas of Grefe & Sidney, P.L.C., Des Moines, for appellee.


   Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

Philip West Jr. sued Sophia Stafford after suffering injuries when she struck him and his dog with her car.  A jury returned a verdict in West's favor.  But West moved for a new trial or additur, arguing the damage award was inadequate.  The district court allowed the verdict to stand.  West now appeals, arguing the evidence supported a higher award for future damages and the value of his pet.   After reviewing the record, we find the district court did not abuse its discretion in denying West's motion and affirm.

**I. Facts and Prior Proceedings**

One morning in June 2021, West was walking in Indianola with his dog, a Boston Terrier named Bolt.  During the walk, West approached the intersection of Salem Avenue and Highway 65/69.  He crossed the street when the traffic light turned in his favor.  Meanwhile Stafford was turning left and struck West and Bolt while they were in the crosswalk.  Stafford testified the sun was in her eyes so she did not see West and Bolt before hitting them.

Likewise, West testified he did not see Stafford's car coming: "One minute, I was walking, and the next minute I was face down on the concrete with a tire by my face."  Emergency services rushed to the scene and examined West, but his main concern was finding Bolt.  Tragically, Bolt had been killed, so West left the scene to take his pet to a veterinarian for end-of-life needs.  After arriving home from the veterinarian, West sought medical attention for his own injuries.  West testified that he had pain in his chest along with scrapes on his arms, hands, and feet. West also testified he had damage to several teeth.  After the accident, West began meeting with a therapist to address his anxiety and depression.

In June 2023, West sought damages from Stafford for her negligence. After a three-day trial in November 2024, the jury awarded him $19,347.12 in damages.[1] The jury awarded $11,127.24 in past medical expenses, $6,000 for past physical and mental pain and suffering, and $2,219.88 for the loss of a pet. The jury did not award any damages for future medical expenses. West moved for a new trial or additur,[2] arguing the jury should have awarded future medical expenses and should have awarded more for his lost pet. *See* Iowa R. Civ. P. 1.1004(4). Stafford resisted. After a hearing, the district court rejected West's motion and allowed the jury's verdict to stand. West appeals.

**II. Scope and Standard of Review**

"We review the trial court's ruling on a challenge to the adequacy of a damage award for an abuse of discretion." *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 414 (Iowa 1997). "An inadequate damage award merits a new trial as much as an excessive one." *McHose v. Physician & Clinic Servs., Inc.*, 548 N.W.2d 158, 162 (Iowa Ct. App. 1996). But we are mindful that "[t]he determination of damages is traditionally a jury function." *Est. of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 345 (Iowa 2005). "Neither the district court, nor this court, should disturb the jury's verdict unless it is flagrantly excessive or inadequate or so out of reason so as to shock the conscience." *Vagts v. N. Nat. Gas Co.*, 8 N.W.3d 501, 520 (Iowa 2024). Put another way, we will "not

---

[1] Stafford admitted she was at fault for the accident, and thus West's damages were the only issue for the jury to determine.
[2] Additur is a judicial remedy that "increases the jury's award of damages to avoid a new trial on grounds of inadequate damages." *Additur*, Black's Law Dictionary 48 (12th ed. 2024).

interfere with an award when it is within a reasonable range of the evidence." *Stender v. Blessum*, 897 N.W.2d 491, 517 (Iowa 2017) (citation omitted). The test we apply is "whether the verdict fairly and reasonably compensates the injury the party sustained." *Baker v. City of Ottumwa*, 560 N.W.2d 578, 583 (Iowa 1997) (citation omitted).

### III. Analysis

### A. Future Damages

West argues it "defies logic" for the jury to have awarded him past but not future medical expenses. West claims the future damages for dental work and ongoing mental-health therapy could exceed $64,000.

On dental treatment, West asserts the verdict was insufficient because it did not cover the cost of repairing several teeth broken in the accident. "To recover the cost of future medical treatment, a plaintiff must furnish substantial proof of the necessity for future treatment and the cost thereof." *Mossman v. Amana Soc'y*, 494 N.W.2d 676, 679 (Iowa 1993). Granted, West presented a dentist's estimate that it would cost $5,160 to repair his teeth. But West had not scheduled that treatment. West testified he would have to have his teeth fixed sooner or later, but he was "terrified" to do so.[3]

And the record left questions about the cause of his dental problems. On cross-examination, West testified that he could not remember if he hit his head during the accident or if he suffered a concussion. West also testified that he did not know why his medical records did not mention any scratches, bruises, or cuts

---

[3] West admitted his fear of dental treatment despite being a retired dentist.

to his face. According to Stafford, "[a]lthough [West] claimed that the damaged teeth occurred in the accident, he did not explain how such damage could have occurred in the absence of a blow to the head." Thus, Stafford contends: "The jury correctly concluded that the objective medical records and [West's] own admission completely undermined the claim for dental expense."

Given the uncertainty in West's testimony and the fact he had not sought treatment for his teeth despite three years between the accident and trial, we will not disturb the jury's verdict here.

West also argues the verdict was insufficient because the jury did not award him damages for future therapy visits. West asserts that as of trial, he had been seeing a therapist for roughly three years to treat his depression and anxiety which was due, in part, to the accident and Bolt's death. According to West, if he continued to attend therapy every week for the rest of his life at $175 per session, it would cost $59,150. But while West's therapist recommended weekly sessions, he had seen her less than once a month after the accident. Indeed, in the year before trial, their only meeting was the day before trial. What's more, the jury heard evidence that some of West's mental health issues predated the accident. Under these facts, we will not interfere with the jury's award of damages.

## B. Loss of Pet Damages

West argues the jury's award of $2,219.88 was inadequate compensation for the loss of Bolt. The jury was instructed:

> The plaintiff is entitled to receive the value of his pet prior to the accident. In determining damages related to the loss of the dog, the jury must determine the fair market value of the dog, which is based on the purchase price, life span, training, usefulness, and desirable traits. You may also include the veterinary cost related to

the cremation of the dog. You may not consider emotional distress, loss of consortium, mental anguish, or any other related claim from the loss of the dog.

Bolt's cremation costs were $219.88, meaning the jury valued Bolt at $2,000.

West points out that at the time of his death, Bolt was nine years old, a licensed therapy dog, had won awards as a show dog, and had value for breeding. After the accident, West bought a Boston Terrier puppy for $4,000; the bill of sale stated that dog's value would be no less than $9,500 once he won a championship.

West argues the jury failed to follow the instruction because "[t]hough Bolt was over 9 years old, he was indeed, a champion." The court instructed the jury to consider Bolt's fair market value, which included his purchase price, not the price of the puppy that West purchased after Bolt's death. *See Nichols v. Sukaro Kennels*, 555 N.W.2d 689, 691–92 (Iowa 1996) (per curiam) (declining to award damages for replacement costs or intrinsic value of pet). Furthermore, when asked if West had arranged to market Bolt as a stud, he testified that he had not. After hearing testimony regarding Bolt's age, his training, and his usefulness, the jury set Bolt's fair market value at $2,000. That determination was within the reasonable range of evidence and fairly compensated West for his damages.

Because the district court did not abuse its discretion in denying West's motion for new trial or additur, we affirm.

**AFFIRMED.**

Greer, J., concurs; Buller, J., specially concurs.

**BULLER, Judge** (specially concurring).

Given existing law and the jury instructions that are law of the case, I join the majority opinion in full. I write separately to address how the legal system values pets because I believe the law has fallen far behind society on this issue.

Under existing Iowa supreme court precedent, pets are treated as personal property—the same as a toaster, a toothbrush, or a trashcan. *E.g.*, *Nichols v. Sukaro Kennels*, 555 N.W.2d 689, 691 (Iowa 1996) (per curiam). I think most pet owners would bristle at that notion. Almost two thirds of Americans own a pet, and 97% of pet owners consider pets part of their family. *See* Anna Brown, *About Half of U.S. Pet Owners Say Their Pets Are as Much a Part of Their Family as a Human Member*, Pew Research Center (July 7, 2023), https://perma.cc/9FVU-SE9C. Just over half of pet owners consider their pets "as much a part of their family as a human member." *See id.*

Despite the importance of pets in modern society, the law has lagged far behind. And Iowa is hardly alone in its "pets are just property" approach. "Most courts . . . still value animals according to their fair market value," not considering their value as companions or the emotional distress and anguish humans experience when a pet is injured or killed. *See* Margit Livingston, *The Calculus of Animal Valuation: Crafting a Viable Remedy*, 82 Neb. L. Rev. 783, 785 (2004). Law review pieces from our neighbors to the north succinctly summarize the criticism of this approach in their titles: Morgan Phelps, Note, *Damages for Tortious Harm to Pets: Minnesota's Market Value Approach Severely Undercompensates Plaintiffs*, 49 Mitchell Hamline L. Rev. 778 (2023); Janice M. Pintar, Comment, *Negligent Infliction of Emotional Distress and the Fair Market Value Approach in*

*Wisconsin: The Case for Extending Tort Protection to Companion Animals and Their Owners*, 2002 Wis. L. Rev. 735.

Even a cursory search reveals that an avalanche of academic writings—as well as some courts and state legislatures—urge the law should recognize pets are part of the family unit, not lifeless personal property. *See generally* Debra D. Burke, *A Clarion Call for Emotional Damages in Loss of Companion Pet Cases*, 15 Tenn. J.L. & Pol'y 250 (2021); David Favre & Thomas Dickinson, *Animal Consortium*, 84 Tenn. L. Rev. 893 (2017); Jade McKenzie, Comment, *Em"bark"ing on the Journey to Expand Recovery of Damages for the Loss of a Companion Animal*, 19 Chap. L. Rev. 659 (2016); Sabrina DeFabritiis, *Barking Up the Wrong Tree: Companion Animals, Emotional Damages and the Judiciary's Failure to Keep Pace*, 32 N. Ill. U. L. Rev. 237 (2012); Logan Martin, Comment, *Dog Damages: The Case for Expanding the Available Remedies for the Owners of Wrongfully Killed Pets in Colorado*, 82 U. Colo. L. Rev. 921 (2011); Kelly Wilson, Note, *Catching the Unique Rabbit: Why Pets Should Be Reclassified as Inimitable Property Under the Law*, 57 Clev. St. L. Rev. 167 (2009); Jason R. Scott, Note, *Death to Poochy: A Comparison of Historical and Modern Frustrations Faced by Owners of Injured or Killed Pet Dogs*, 75 UMKC L. Rev. 569 (2006); Elaine T. Byszewski, *Valuing Companion Animals in Wrongful Death Cases: A Survey of Current Court and Legislative Action and a Suggestion for Valuing Pecuniary Loss of Companionship*, 9 Animal L. 215 (2003); William C. Root, Note, *"Man's Best Friend": Property or Family Member?  An Examination of the Legal Classification of Companion Animals and Its Impact on Damages Recoverable for Their Wrongful Death or Injury*, 47 Vill. L. Rev. 423 (2002); Sonia S. Waisman & Barbara R.

Newell, *Recovery of "Non-Economic" Damages for Wrongful Killing or Injury of Companion Animals: A Judicial and Legislative Trend*, 7 Animal L. 45 (2001); Steven M. Wise, *Recovery of Common Law Damages for Emotional Distress, Loss of Society, and Loss of Companionship for the Wrongful Death of a Companion Animal*, 4 Animal L. 33 (1998).

In reviewing the record and briefs in this case, it is clear Philip West feels the jury dramatically undervalued Bolt, who was West's companion for nearly a decade. West described how they visited "handicapped kids" and "the local nursing home" together, where Bolt acted as a therapy dog. And they went to dog shows, where Bolt earned awards. Even reading the black-and-white text of the transcript, West's love for Bolt is clear. I understand why West feels like neither he nor Bolt received justice in this case. But our court's role in the legal system is to correct errors at law. Iowa Code § 602.5103(1) (2025). And under present law, I agree with the majority opinion there is no basis to disturb the verdict.